JEAN D. LANGSTON ET AL. *v.* ALLSTATE
INSURANCE COMPANY

[No. 42, September Term, 1978.]

*Decided October 13, 1978.*

The cause was argued before GILBERT, C. J., and MORTON and THOMPSON, JJ.

*Walter G. Moyle* and *B. Paul Noble,* with whom were *Noble, Moyle & Roberts* on the brief, for appellants.

*Charles E. Wilson, Jr.,* with whom were *McCarthy & Wharton* on the brief, for appellee.

GILBERT, C. J., delivered the opinion of the Court.

This litigation between Jean D. Langston, her son, Lawrence Langston, the appellants, and their insurer, Allstate Insurance Company, the appellee, is being fought on two fronts, *i.e.,* Maryland and Florida. At this point in time, the Langstons have seen their victory, gained in an arbitration proceeding and confirmed in the Circuit Court of the 11th Judicial Circuit in and for Dade County, Florida, in the form of a summary judgment "against Allstate Insurance Company in the amount of $40,000.00," qualified but not totally nullified by the District Court of Appeal of Florida, Third District, in *Allstate v. Langston,* Fla. App., 358 So. 2d 1387 (1978). In the meantime, the Circuit Court for Montgomery County, patently declining to follow the Florida arbitration proceeding or the Dade County circuit court, entered a judgment in favor of the Langstons against Allstate for $5,000.

The battle between the litigants is being waged over whether claimants, under a motor vehicle policy insuring two vehicles on separate premiums, may "stack" or pyramid coverage so as to obtain the maximum amount payable on each vehicle. Phrased in more explicit terms, the issue is, when two premiums are paid in one policy for two vehicles, may the claimant add or "stack" the maximum amount

payable to any one person under the policies so that the $20,000 maximum amounts on each policy become a total of $40,000.

The arbitrators expressed no opinion on the question, nor should they have done so under Florida law, because that State has held in *Government Employees Insurance Co. v. Mirth,* 333 So. 2d 545, 547 (Fla. 3d. DCA 1976) that:

> "Under a liability indemnity insurance policy providing uninsured motorist coverage, issues relating to the merits of the claim against the tort-feasor are triable on the arbitration, *but an issue bearing on coverage is not to be so tried, and is triable* by the court. *Cruger v. Allstate Insurance Company,* Fla. App. 1962, 162 So. 2d 690; *Zeagler v. Commercial Union Ins. Co. of N.Y.,* Fla. App. 1964, 166 So. 2d 616." (Emphasis supplied.)

*See also Allstate v. Langston, supra.*

The Circuit Court for Montgomery County implicitly held that the "stacking or pyramiding" of benefits was not allowed in Maryland. Moreover, the court sanctioned a credit to Allstate in the amount that the Langstons recovered from the insurance carrier on the vehicle in which Lawrence Langston was riding when he was injured.

Our task then is to rise above the debate between the parties and to endeavor to secure for each its respective rights, thereby securing those rights for the people of the State.

## THE FACTS.

Lawrence S. Langston, a Maryland resident, but a student at the University of Miami, was severely injured on September 23, 1975, as the result of a collision between an uninsured vehicle and a motorcycle on which Langston was a passenger. Langston was paid $15,000, the full amount of the uninsured motorist coverage of the motorcycle owner's motor vehicle liability. At the time of the accident, Langston was an insured under a motor vehicle liability policy

containing uninsured motorist coverage. That policy had been issued in Maryland by Allstate to Mrs. Jean D. Langston. It insured her against liability and loss occasioned by an uninsured motorist. The policy covered two vehicles, a 1972 Ford and a 1966 Chevrolet. Lawrence Langston was included within the ambit of the policy by his status as son of the insured and resident of the same household as the insured. The policy limit as to an uninsured motorist for each vehicle was $20,000 each person, $40,000 each accident.[1]

The damages to Lawrence "far exceeded" the $15,000 that was paid to him by Universal Underwriters Insurance Co., the motorcycle operator's insurance carrier. Lawrence, therefore, made demand upon Allstate in the amount of $40,000, a figure he arrived at by "stacking" the $20,000 coverage afforded for damages caused by an uninsured motorist [2] on each of his mother's two vehicles. Allstate rejected the "stacking" concept. Instead, it deducted the $15,000 paid to Lawrence by Universal Underwriters from the $20,000 figure to which it contended it had obligated itself through the issuance of the policy to Mrs. Langston and offered the sum of $5,000 to Lawrence in settlement of his claim.

The Langstons, in accordance with the terms of their policy,[3] demanded that the dispute "be settled by arbitration

---

**1.** Md. Ann. Code art. 48A, § 541 (c) mandates that "every policy of motor vehicle liability insurance issued, sold, or delivered in this State after July 1, 1975 shall contain coverage, in at least the amounts required under Title 17 of the Transportation Article, for damages which the insured is entitled to recover from the owner or operator of an uninsured motor vehicle. . . ." Transportation Article Title 17, § 17-103 (b) requires coverage "of up to $20,000 for any one person and up to $40,000 for any two or more persons, in addition to interest and costs. . . ."

**2.** *See* n. 1, *supra.*

**3.** Section II, subsection "Conditions," sub-subsection 11, of the policy issued by Allstate to Mrs. Langston provided:

> "*Arbitration.* If any person making claim hereunder and Allstate do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile because of bodily injury to the insured or property damage, or do not agree as to the amount of payment which may be owing under this coverage, then upon written demand of either, the matter or matters upon which such person and Allstate do not agree shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award

in accordance with the rules of the American Arbitration Association." Seemingly racing to circumvent the arbitration proceeding, Allstate, on March 2, 1977, filed, in the Circuit Court for Montgomery County, a "Bill for Declaratory Relief." That bill was followed two days later in Florida, by Allstate's instituting a "Complaint for Injunction" [4] and then on March 9, 1977, a "Motion for Temporary Stay" of the arbitration pending the determination of the Maryland suit brought in Montgomery County. The motion to stay was denied so that the arbitration hearing was held in Dade County on March 14, 1977. The arbitrators made the following award:

"THE UNDERSIGNED ARBITRATOR(S), designated under the arbitration provision of Policy No. 0-18-550435, having been duly sworn and having heard the proofs and allegations of the parties, AWARDS as follows:

The Arbitrators [*sic*] AWARD to the claimant is FORTY THOUSAND DOLLARS AND NO CENTS ($40,000.00).

This AWARD is subject to a judicial determination of the applicable policy limits. Claimant contends stacking applies. Respondent denies this. Respondent contends it is entitled to a $15,000.00 set-off. Claimant denies this. Claimant contends there is $40,000.00 in coverage. Respondent contends the coverage is $5,000.00. The Arbitrators make no decision in this regard. If the coverage is $5,000.00 the AWARD is $5,000.00. If the coverage is $40,000.00 the AWARD is $40,000.00.

This Award is in full settlement of all claims submitted to this arbitration."

---

rendered by the arbitrators may be entered in any court having jurisdiction thereof. Such person and Allstate each agree to consider itself bound and to be bound by any award made by the arbitrators pursuant to this coverage."

4. A counterclaim was filed by the Langstons, and it was on the basis of the counterclaim, together with the Award of Arbitration, that judgment was entered against Allstate.

On the basis of the arbitration award, the Langstons moved for summary judgment. The Dade County court granted the motion and entered judgment for Lawrence by confirming and adopting "as the judgment of . . . [the] court" the "Award of Arbitration." On July 28, 1977, the Dade court "entered two additional orders. One was entitled 'Order Granting . . . [Lawrence's] Amended Motion for Summary Judgment.' That order did not contain confirmation of the arbitration award, but recited that the motion for summary judgment was granted, and ordered 'that accordingly summary judgment shall be entered against Allstate . . . in the amount of $40,000.00.' The other, entitled 'Final Judgment,' ordered that Lawrence recover from Allstate . . . the said amount of $40,000.00, with provision therein for execution to issue." *Allstate v. Langston, supra.* Allstate moved for a rehearing which was denied and then, as we have seen, appealed to the District Court of Appeal of Florida, Third District.

While the matter was pending in the Florida trial court, Allstate moved that summary judgment be granted to it by the Montgomery County trial court on the ground that there was "no genuine dispute between the parties as to any material fact, and that . . . [it] was entitled to judgment as a matter of law." Md. Rule 610. The circuit court denied the Langston motion to stay the Maryland case until after disposition by Florida.

On December 12, 1977, the court heard argument on Allstate's motion for summary judgment, opposition thereto, the Langstons' "Counter-Motion for Summary Judgment" and the opposition to that motion. The court denied the counter-motion but granted Allstate's motion and entered judgment in favor of the Langstons for $5,000, the amount Allstate maintained that it owed under Mrs. Langston's motor vehicle liability policy after allowing a deduction of a sum equal to the amount recovered from Universal.

This appeal followed, but before the matter was argued in this Court, the Florida intermediate Court of Appeals, as we have previously said, reversed the Dade County circuit court.

The Florida appellate court held that

> "[t]he action initially filed in Maryland for coverage determination conferred on that court the jurisdiction to litigate and settle the question. *Wade v. Clower,* 94 Fla. 817, 114 So. 548 (1927). For that reason, the question as to the coverage limit could not have been decided in the subsequently filed action in Dade County ... even if the latter action had been brought for that purpose. . . .
>
> Where the policy was issued in Maryland to a resident of that State, the construction and legal effect of the terms of the policy and the rights and obligations of the parties thereto are to be determined by the laws of that State. (Citations omitted)."

## *THE LAW.*

Before we explore whether the so-called "stacking or pyramiding" is permitted by the Maryland statute, we think it well to discuss the question of the credit allowed Allstate as a result of the payment to the Langstons by Universal Underwriters of $15,000.

If there were any doubt over whether a credit could be taken, it was resolved in a strikingly similar case, by the Court of Appeals in *McKoy v. Aetna Casualty & Surety Co., Inc.,* 281 Md. 26, 374 A. 2d 1170 (1977).

McKoy was struck by a negligent driver while she was operating her vehicle in Washington, D.C. The negligent driver was insured by Government Employees Insurance Company (GEICO), but the liability of GEICO, under the policy was limited to $10,000.[5] McKoy alleged her damages to be substantially in excess of $20,000. Inasmuch as the GEICO policy limit was less than $20,000, the tort-feasor was, for Maryland purposes, deemed to be an uninsured driver, as that term was used in the Aetna policy insuring McKoy against injury by uninsured motorists.

---

5. At the time of the accident, $10,000 was the minimum amount of automobile liability insurance required in the District of Columbia.

GEICO paid McKoy $10,000 in satisfaction of its obligation under its policy. McKoy then claimed indemnification from Aetna, under the uninsured motorist coverage, in the amount of $20,000. Aetna asserted that it was entitled to a set off of the amount paid by GEICO so that it was liable only to the extent of $10,000. The circuit court agreed with Aetna, but the Court of Appeals did not.

The Aetna policy provided in pertinent part:

" 'I. UNINSURED MOTORISTS COVERAGE (Damages for Bodily Injury and Property Damage Caused by Uninsured Highway Vehicles)

'The Company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle because of bodily injury or property damage, caused by accident and arising out of the ownership, maintenance or use of such uninsured highway vehicle; provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration.

* * *

'III. LIMITS OF LIABILITY

'Regardless of the number of insureds under this insurance, the company's liability is limited as follows:

(a) The limit of bodily injury liability stated in the schedule as applicable to "each person" is the limit of the company's liability for all damages because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting "each person,"

the limit of liability stated in the schedule as applicable to "each accident" is the total limit of the company's liability for all damages because of bodily injury sustained by two or more persons as the result of any one accident.

* * *

(d) Any amount payable to an insured under the terms of this *insurance* shall be reduced by (1) all sums paid to such insured for bodily injury or property damage by or on behalf of the person or organization legally liable therefor and (2) the amount paid and the present value of all amounts payable to such an insured under any workmen's compensation law, exclusive of non-occupational disability benefits.' " (Emphasis supplied.)

The Court held that the words "any amount payable" as employed in Clause III (d) "should be construed as providing for a setoff against the total damages suffered and not against the face value of the endorsement." 281 Md. at 30. The Court went on to say:

"Section I, 'Uninsured Motorist Coverage,' sets out the basic liability of Aetna, to pay all damages which the insured is legally entitled to recover resulting from an accident with an uninsured motorist. Section III, entitled 'Limits on Liability,' begins 'the company's liability is limited as follows.' This strongly suggests that the limitations which follow are to be understood as limits on the primary liability articulated in Section I.

Section III(a) then limits liability to $20,000 per person. Sections III(b) and (c) concern limits on property damage and claims · made under other insurance. Finally, Section III(d) contains the setoff clause. There is no indication that III(d) is in any way subordinated to III(a). Both clauses stand on equal footing, and both must therefore be understood as

independently modifying the primary liability of Section I. That is, amounts paid to an insured on behalf of the tortfeasor shall be deducted from 'all sums which the insured ... [is] legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle.' Under the terms of this contract the setoff clause, III(d), applies to the total damages incurred and is not a further limitation upon the $20,000 limit set forth in clause III(a)." 281 Md. at 30-31.

The Allstate policy which we are called upon to construe provided:

## "SECTION II
## "PROTECTION AGAINST BODILY INJURY AND PROPERTY DAMAGE BY UNINSURED AUTOMOBILES

### COVERAGE SS — Uninsured Motorists Insurance

*Allstate will pay all sums which the insured* or his legal representative *shall be legally entitled to recover as damages from the owner* or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury', sustained by the insured or property damage, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and Allstate or, if they fail to agree may be made by arbitration.[6]

---

6. *But see,* Md. Ann. Code art. 48A, § 541 (c) provides that:

"Any provision in any policy of motor vehicle liability insurance issued after July 1, 1975, with respect to the coverage provided for

No judgment against any person or organization alleged to be legally responsible for the bodily injury or property damage shall be conclusive, as between the insured and Allstate, of the issues of liability of such person or organization or of the amount of damages to which the insured is legally entitled unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent of Allstate.

. . . .

3. *'uninsured automobile'* means:

   (a) a motor vehicle with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured automobile is principally garaged, no bodily injury and property damage liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile, or with respect to which there is a bodily injury and property damage liability bond or insurance policy applicable at the time of the accident but the company writing the same either has denied coverage thereunder or is or becomes insolvent; or

   (b) a hit-and-run automobile as defined;

but the term *'uninsured automobile'* shall not include:

   (i) an insured automobile;

   (ii) a motor vehicle which is owned or operated by a self-insurer within the meaning of any motor vehicle financial responsibility law, motor carrier law or any similar law;

---

damages sustained by the insured as a result of the operation of an uninsured motor vehicle, which commands or requires the submission of any dispute between the insured and the insurer to binding arbitration, is prohibited and shall be of no legal force or effect."

Thus, inasmuch as the policy is governed by Maryland Law, the arbitration proceeding was not binding.

(iii) a motor vehicle which is owned by the United States of America, Canada, a state, a political sub-division of any such government or an agency of any of the foregoing;

(iv) a land motor vehicle or trailer if operated on rails or crawler-treads or while located for use as a residence or premises and not as a vehicle; or

(v) a farm type tractor or equipment designed for use principally off public roads, except while actually upon public roads.

. . . .

## 6. *Limits of Liability.*

(a) The limit of bodily injury liability stated in the declarations as applicable to 'each person' is the limit of Allstate's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting each person, the limit of liability stated in the declarations as applicable to 'each accident' is the total limit of Allstate's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by two or more persons as the result of any one accident.

. . . .

(c) Any amount payable under the terms of this coverage because of bodily injury or property damage sustained in an accident by a person who is an insured under this coverage shall be reduced by

(1) all sums paid on account of such bodily injury or property damage by or on behalf of (i) the owner or operator of the uninsured automobile and (ii) any other

person or organization jointly or severally liable together with such owner or operator for such bodily injury or property damage including all sums paid under the Bodily Injury Liability Coverage or Property Damage Liability Coverage of the policy. . . .

. . . .

(d) Any payment made under this coverage to or for any insured shall be applied in reduction of the amount of damages which he may be entitled to recover from any person insured under the Bodily Injury Liability Coverage or Property Damage Liability Coverage of the policy.

(e) Allstate shall not be obligated to pay under this coverage that part of the damages which the insured may be entitled to recover from the owner or operator of an uninsured motor vehicle which represents loss paid or payable to the insured under any automobile physical damage insurance of the policy.

*Other Insurance.* With respect to bodily injury to an insured while occupying an automobile not owned by the named insured, the insurance under this coverage shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.

Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and Allstate shall not be liable for a

greater proportion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance." (Emphasis supplied.)

Allstate asserts that the instant case is distinguishable from *McKoy* because of certain "technical differences" which "must [be] considered." They argue, "Subordination of clauses is not the issue as it was in *McKoy,* as [policy provision] 6(c)(i) applies to a reduction of amounts payable from the 'coverage' which is modified or delineated in [policy provision] 6(a). It is the *coverage* that is reduced, not all sums."

A recent Court of Appeals case, *State Farm Mut. Auto. Ins. Co. v. Md. Auto. Ins. Fund,* 277 Md. 602, 356 A. 2d 560 (1976), construed the meaning of "coverage" as it is used in Md. Ann. Code art. 48A, § 541 (c). As Chief Judge Murphy noted therein: " '[c]overage' is a common insurance term; it has been defined as the 'aggregate of risks covered by the terms of a contract of insurance.' Webster's Third New International Dictionary 525 (1961)." The present edition, *Webster's Third New International Dictionary Unabridged* (1976 ed.), carries that same definition of "coverage." Among its meanings, "coverage" is listed as "1. the act or fact of including or treating: a thing that covers: COVER: as a: INSURANCE: protection by insurance policy: inclusion within the scope of a protective or beneficial plan . . . c: the aggregate of risks covered by the terms of a contract of insurance." *See also The American Heritage Dictionary of the English Language* (1970 ed.) which defines "coverage" to mean "2. The extent of protection afforded by an insurance policy." In other words, "coverage" is insurance. When so read, we fail to see the distinction between *McKoy* and the case *sub judice.*

"Coverage SS" of the Allstate policy provides that "Allstate will pay all sums which the insured . . . shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile. . . ." That language does not limit the payment by Allstate to the difference

between the amount actually obtained from the uninsured driver and the Allstate policy limits. If Allstate had desired to so delimit its liability it should have so provided. As we read "Coverage SS" Allstate is liable, to the extent, of course, of its policy limits, to the insured for all damages *he is entitled to recover* from the uninsured motorist, less the amount actually recovered. Thus, if, in the instant case, the insured were entitled to recover damages of $100,000,[7] the insured may recover from Allstate that sum reduced by the $15,000 paid by Universal and further reduced to the limit of Allstate's liability under the Uninsured Motorist Endorsement. *Aetna v. McKoy, supra.*

Even as Judge Eldridge said in *McKoy,* if "the interpretation of the policy urged upon us by . . . [Allstate] is . . . [a] reasonable one, this would, at best, create an ambiguity. In such situations, ambiguities are resolved against the author of the Instrument." 281 Md. at 31. *See also Penn., Etc., Ins. Co. v. Shirer,* 224 Md. 530, 537, 168 A. 2d 525 (1961):

> "However, if the insurance company, in attempting to limit coverage . . ., failed to make its intended meaning clear and drew an ambiguous clause, that ambiguity would be resolved against it as the one who drafted the instrument, as is true in the construction of contracts generally, *Ebert v. Millers Fire Insurance Co.,* 220 Md. 602, 611, and cases cited; *Employers' Liability Assurance Corporation, Ltd. v. Reed's Refrigeration Service, Inc.,* 222 Md. 49, 54."

We now turn our attention to the principal question put to us by the parties. Does the Maryland Statute, Article 48A, proscribe "stacking or pyramiding"? We shall not answer that question because as we see it neither "stacking nor pyramiding" is involved.[8]

---

7. The $100,000 figure is hypothetical and should not be construed or interpreted as this Court's subtle effort to place a monetary value on Lawrence Langston's loss.

8. Judge Wilner, writing for this Court in Oarr v. Government Employees Ins. Co., 39 Md. App. 122, 129, 383 A. 2d 1112 (1978), "expressly" declined to consider the issue put to us in this appeal. Judge Wilner did, however, refer in n. 9 to a number of cases, including those cited in the present opinion, that permitted "stacking."

In order to avoid confusion in the minds of the reader, we shall define what we mean by "stacking or pyramiding." Both of those terms, as used in insurance litigation, may be defined to mean the recovering by a claimant "several times over for his injuries." A.J. Widiss, *A Guide to Uninsured Motorists Coverage* (1969). So that if a person is insured by carrier A, carrier B, carrier C, and carrier D, and he recovers the *full amount of his claim* from carrier A, subsequent recovery from B, C, and D for the same loss is "stacking" or "pyramiding." [9] He has, in short, turned his loss into a three hundred percent profit. That type of activity is barred by Md. Ann. Code art. 48A, § 543 (a), insofar as coverage under an uninsured motorist endorsement is concerned. Section 543 (a) provides:

> "Notwithstanding any other provision of this subtitle, no person shall recover benefits under the coverages required in §§ 539 and 541 of this article from more than one motor vehicle liability policy or insurer on either a duplicative or supplemental basis." [10]

Allstate contends that section 543 (a) prohibits Langston's recovery from Allstate because that section forbids "duplication of benefits" or recovery on "a supplemental basis."

Allstate fails to note that this section only applies when there is *"more than one* motor vehicle liability policy or insurer. . . ." (Emphasis supplied.) Since there is only one motor vehicle liability policy covering the Langston vehicles and since Allstate is the only insurer from whom recovery is sought under section 541 of Article 48A, section 543 (a) of that article is not apposite to the present case. An additional flaw in Allstate's argument is that the Langstons seek to do neither of the two proscribed acts.

Duplication of benefits is "stacking." It is payment in full twice or more for the same claim. For example, if, as we have

---

**9.** The Court is cognizant that many medical pay or loss of income policies allow stacking or pyramiding. The same is true of life insurance policies.

**10.** Enacted as Laws 1972, ch. 73, § 1 and codified as § 543 (a), Md. Ann. Code art. 48A.

previously said, claimant *recovers the full amount* of the sum he is "legally entitled to recover as damages from the owner or operator of an uninsured automobile," he may not successfully assert a claim against his own insurance carrier inasmuch as that claim would be duplicitous. There is nothing in the case at Bar that suggests an effort to duplicate benefits. The injury and damages to Lawrence Langston far exceed the $15,000 he obtained from Universal, *and* the $40,000 he maintains Allstate owes him under its policy, even when the two sums are added together. The truth of that statement is not controverted.

The other activity barred by section 543 (a) is that of supplementing benefits recovered under the Uninsured Motorist Endorsement. We interpret "supplemental" to mean securing remuneration over and above the recovery from an uninsured motorist of all that the claimant is legally entitled to recover. The bar on supplemental payment prevents recovery of more than all one is legally entitled to recover. By way of illustration, we point out that if the claimant is legally entitled to recover the sum of $100,000 [11] from the uninsured motorist, and claimant so recovers, he may not successfully prosecute a claim against his own insurance carrier for an additional sum or "supplement." Such a recovery would amount to "stacking or pyramiding."

Section 543 (a) does not, however, proscribe the claim the Langstons are asserting against Allstate. We think it significant to note that the Allstate premium on the Langston vehicles was billed as follows:

| "COVERAGE DESCRIPTION | 72-Ford | 66-Chev. |
|---|---|---|
| * * * | * | * |
| SS Uninsured Motorists | $4.00 | $4.00 |
| * * * | * | *" |

Patently, a separate premium of $4.00 on each of the two vehicles was charged and collected by Allstate. Notwithstanding that it has collected two premiums it seeks

---

11. *See* n. 7, *supra.*

to make but one remittance. From the record, we are unable to determine to which of the two vehicles Allstate assigned its loss, or if it differentiated between them.

The question of whether an insured may recover on an uninsured motorist claim for each of the vehicles on which he has paid a premium may be new in this State, but it most certainly is not a new concept. Similar claims have been made in other jurisdictions with differing results.[12]

The basic premise upon which the purpose of legislation requiring insurers to provide protection to its insured in the form of uninsured motorist coverage is the idea of placing the insured motorist in the same position that he would have been if the operator or owner of the uninsured vehicle had been properly insured.[13]

Some courts have held that the "other insurance" clause of motor vehicle liability policies was generally valid and not repugnant to the statute requiring uninsured motorist coverage. They have taken the view that "the statute was not designed to provide the insured with greater insurance protection than would have been available had the insured been injured by a person having a policy containing the minimum required statutory limits." 28 A.L.R.3d 558; *M.F.A. Mut. Ins. Co. v. Wallace* (1968 Ark.), 431 S.W.2d 742; *Tindall v. Farmers Auto. Management Corp.,* 83 Ill. App. 2d 165, 226 N.E.2d 397 (1967), 28 A.L.R.3d 546. The decisions adopting the "other insurance" clause reasoning are in conflict with *McKoy* wherein the Court of Appeals implicitly rejected that approach and refused to follow the view that the "other insurance" clause limited the insured's right of recovery to the amount he could obtain from the uninsured motorist.

We think there is much to be said for the point of view expressed in *Sturdy v. Allied Mut. Ins. Co.,* 203 Kan. 783, 457 P. 2d 34 (1969), a case bearing similarity to that now before us. Sturdy had two automobiles insured on the same policy. He paid a separate premium on each car. While riding on a

---

12. *See* 28 A.L.R.3d 551, Annotation, "Uninsured Motorist Insurance: Validity and Construction of 'Other Insurance' Provisions."

13. *Id.* at 556.

motorcycle, he sustained bodily injury as the result of a collision with an uninsured motorist.

Sturdy and the insurer submitted the issue of damages to arbitration.[14] The parties agreed that if the arbitrator found in favor of the insured, the insurer would pay any sum up to the minimum coverage of $10,000. If the award exceeded $10,000, it was agreed that the court should determine whether the insurer was liable for that sum. The policy, as does that in the case *sub judice,* provided that "[w]hen two or more automobiles are insured hereunder, the terms of this policy shall apply separately to each. . . ." [15] The Kansas court concluded that:

> "Defendant here chose to issue coverage on two separate automobiles and to accept a premium for each. Under these facts clauses designed to prevent the payment of a disproportionate amount of a loss which is properly shared with another insurance company should not be distorted to reduce whatever amount is otherwise due the insured under his policy.
>
> . . . .
>
> . . . [T]he policy provides the named insured with two kinds of coverage: While he is in his insured automobile, and wherever else he may happen to be when he suffers bodily injury due to an uninsured motorist. This latter constitutes [*sic*] a broad reservoir of coverage. The only exception in it arises from the specific exclusionary clause which provides the policy does not apply to bodily injury to an insured while occupying an automobile (other than an insured automobile) owned by the named insured (or a relative) or through being struck by such an automobile. Obviously this exclusion is designed to prevent two or more automobiles being covered for the price of one, inasmuch as ownership of an

---

14. Md. Ann. Code art. 48A, § 541 (c) proscribes language in a policy requiring arbitration of uninsured motorist disputes between insurer and insured. *See* n. 6.

15. 203 Kan. at 787, 457 P. 2d at 38. The quoted wording is identical to that contained in the Allstate policy issued to the Langstons.

automobile is the foundation of the entire policy, and to induce persons owning more than one automobile to secure coverage for all. In effect, then, as to the named insured, upon his payment of a single premium for one automobile, the policy provides vast coverage — with the single important exception. If, in paying one premium for a single automobile, coverage is purchased while occupying the insured automobile along with the coverage not tied to that automobile, the question might well be asked, What coverage is intended by payment of an equal premium for a second automobile? Does it also include the broad reservoir of coverage secured under the first premium for the first automobile, and if not, why?" 203 Kan. at 789-92, 457 P. 2d at 39-41.

The court then answered its own rhetorical question, stating:

"[7] It must be borne in mind the purpose of uninsured motorist insurance is to provide compensation for personal injury to the innocent victim of the uninsured motorist. As to the named insured the coverage is a contract benefit for which he has paid. Here the damage to the insured has been determined and he now seeks indemnity for it. *He is not seeking any windfall as a result of his injury but he is seeking full indemnity based on payment of two separate premiums.* Applying traditional rules of construction we think he is entitled to that coverage. Of the two constructions which could be placed on the limitation of coverage in this particular policy under these facts, this conclusion effectuates insurance as to each automobile mentioned in the policy and permits recovery rather than forfeiture of a benefit for which the insured has paid. Defendant seeks to avoid fully indemnifying its insured on what we believe to be an overly strict construction of its policy in its favor. If it were intended to restrict the limit of liability to $10,000 in

one policy where more than one automobile is covered, this could have been very easily accomplished in plain, unmistakable language.... We are accustomed to purchasing insurance which follows the person in units or multiples, with the premium fixed by the insurer accordingly (the premium, of course, is subject to state regulation). *When we pay a double premium we expect double coverage. This is certainly not unreasonable but, to the contrary, is in accord with general principles of indemnity that amounts of premiums are based on amounts of liability.* Defendant argues that what plaintiff is seeking amounts to pyramiding coverage but nothing is said about pyramiding the premiums which effectuate the coverages. We would not be understood as implying that an injured insured can pyramid separate coverages in the same policy so as to recover more than his actual loss (see Rosson v. Allied Mutual Ins. Co., Kan., 457 P.2d 42)." (Emphasis supplied.) 203 Kan. at 792-93, 457 P. 2d at 41-42.

The Supreme Court of Florida reached the same result in *Mullis v. State Farm Mut. Auto. Ins. Co.,* 252 So. 2d 229 (Fla. 1971), holding that "insurance policies covering two or more automobiles owned by the insured with uninsured motorist coverage included and containing a limitation of liability ... provided coverage to the extent of the bodily injury inflicted upon an insured in the total amount of the per person coverage for each vehicle." Cited with approval in *Tucker v. Government Employees Ins. Co.,* 288 So. 2d 238, 241 (Fla. 1973). *See also Sellers v. Government Employees Ins. Co.,* 214 So. 2d 879 (1968), *cert. dismissed,* 229 So. 2d 873 (Fla. 1969).

"It is an anomaly to contend that if two automobiles are combined in the coverage of one auto liability insurance policy with uninsured motorist protection added that an exclusion of the kind here involved may be validly inserted, but that

if a separate policy covered each automobile such exclusion is invalid. The mere form of a policy — a combination coverage — should not be the predicate for an exclusion of additional coverage." *Tucker v. Government Employees Ins. Co., supra* at 242.

Under the rationale of *McKoy,* an insured is not restricted to the amount of the uninsured motorist insurance of the vehicle in which he was riding at the time of the accident giving rise to his loss, *see also Sellers v. Government Employees Ins. Co., supra,* nor may his own company setoff the amount recovered from the insurance carrier of the vehicle in which he was riding. Of course, the insured may only recover for his full loss. He is not entitled to make a profit by collecting more than the total loss. Such being the law, we can perceive of no reason why a different rule should be applied when the insurance coverage afforded on different vehicles is combined into one policy instead of two or more, particularly where, as here, a separate premium is charged for each vehicle covered by the policy. *Sellers v. Government Employees Ins. Co., supra.*

In *Lipscombe v. Security Ins. Co. of Hartford,* 213 Va. 81, 83, 189 S.E.2d 320, 322 (1972), the court repeated what it had held in *Cunningham v. Insurance Co. of North America,* 213 Va. 72, 189 S.E.2d 832 (1972), wherein it has adopted the reasoning of the Kansas court in *Sturdy* that an "insured is entitled to double coverage for the double premium paid."

The Court of Appeals of Louisiana, Third Circuit, in *Roberie v. State Farm Mut. Ins. Co.,* La. App., 291 So. 2d 923 (1974), considered a case wherein Roberie was insured by State Farm on both of his motor vehicles. A separate policy had been issued on each. Roberie, while driving one of his vehicles, was struck and seriously injured by a "hit and run" driver who has never been apprehended. As a result of the impact, Roberie's damages were "equal to or in excess of $10,000." Each of the two policies issued to Roberie by State Farm provided "uninsured motorist coverage of $5,000.00 for each person and $10,000.00 for each accident." Roberie claimed $5,000 under each policy. State Farm offered to pay only

$5,000. The Court, noting that a premium had been charged and paid for uninsured motorist insurance in each policy, allowed recovery on both policies. Moreover, the Court disallowed a deduction made under the medical payment coverage.

There are, to be sure, a number of jurisdictions which have taken a contrary view.[16] We are of the belief, however, that the rationale of *McKoy,* together with what the Florida Supreme Court, in *Tucker,* termed the "weight of authority" leads to the conclusion that in Maryland the payment of a premium for uninsured motorist insurance on each of two or more separate motor vehicles permits recovery on each, but only to the extent of one full recovery for any loss sustained by the insured. If the Legislature wants to limit recovery to a specified sum or to not more than the amount payable under a policy insuring one motor vehicle, it has but to so provide.

As we see it, the uninsured motorist insurance mandated by the General Assembly to be included in each automobile insurance policy issued in this State is remedial legislation designed for the protection of the motoring public. Being remedial in nature, the statute must be construed liberally so as to effectuate its benevolent purpose in affording insurance coverage to the injured party.

We hold that when an insurance carrier issues an automobile liability insurance policy containing, as it must, uninsured motorist coverage on two or more motor vehicles, and it charges and collects a separate premium on each vehicle of that coverage, it is liable to its insured for the total coverage for which he has paid, or the full amount of his damages, whichever is less.

Other issues raised by the Langstons involve *res judicata* and the refusal of the Circuit Court for Montgomery County to stay this proceeding pending disposition by the Florida appellate court. That decision having been handed down before oral argument and holding that Maryland is the proper

---

16. *See* n. 12, *supra.*

forum for the interpretation of the policy, the issues are now moot.

> *Judgment reversed.*
> *Case remanded to the Circuit Court for Montgomery County with instruction to enter judgment in favor of the appellants against the appellee in such amount as the Circuit Court may determine, consistent with this opinion.*
> *Costs to be paid by appellee.*