Dale M. ROBINSON and Jenny L. Robinson, his wife, Plaintiffs,

v.

ADCO METALS, INC. and Clyde W. Hickman, and Nationwide General Insurance Company, Defendants,

v.

NEW CASTLE COUNTY, a political subdivision of the State of Delaware, Third-Party Defendant.

Civ. A. No. 86–107–JLL.

United States District Court, D. Delaware.

June 26, 1987.

Robert K. Beste, Jr., of Biggs & Battaglia, Wilmington, Del., for plaintiffs.

John A. Elzufon and Joanne B. Wills of Elzufon & Associates, P.A., Wilmington, Del., for defendants Adco Metals, Inc. and Clyde W. Hickman.

Beth E. Evans of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del., for defendant Nationwide General Ins. Co.

Donald Elihu Evans of Bryde, Ament & Evans, Wilmington, Del., for third-party defendant New Castle County.

**MEMORANDUM OPINION**

LATCHUM, Senior District Judge.

This case began as a relatively straightforward negligence action, but now involves a number of parties, claims and cross-claims. One of the defendants, Na-

1. New Castle County did not submit briefs because its position on this motion is reflected in the Hickman/Adco briefs. (*See* D.I. 89.)

2. Hickman is an Adco employee and was driving an Adco vehicle when he hit the Robinsons' car. Therefore, the Robinsons intend to impute

tionwide General Insurance Company ("Nationwide"), filed a motion pursuant to Federal Rule of Civil Procedure 12(b) to dismiss the plaintiffs' claim or alternatively to sever the claim from the claims against the other defendants. (Docket Item ["D.I."] 52.) Nationwide's motion is the subject of this opinion. The motion to dismiss was based on the contention that the insurance policy issued by Nationwide to the plaintiffs, Dale and Jenny Robinson ("the Robinsons"), requires mandatory arbitration of claims. This half of Nationwide's motion was withdrawn after the first round of briefing, because the parties discovered that the Robinsons were covered by a Maryland policy, instead of a Delaware policy. (D.I. 79 at 5.) The Maryland policy provides that both the insured and Nationwide must agree to arbitration. Such agreement was not reached, so Nationwide is unable to demand arbitration.

After the discovery of the Maryland policy, the Court agreed to allow supplemental briefing. (D.I. 72.) In the supplemental briefs the parties disagree about whether Maryland or Delaware law applies to the motion before the Court. Nationwide contends Delaware law applies to procedural matters such as a motion to sever, whereas the Robinsons, Clyde W. Hickman ("Hickman"), and Adco Metals, Inc. ("Adco")[1] argue that Maryland law applies because to resolve the motion, the Court must make a substantive interpretation of the Maryland insurance policy.

The original and supplemental briefs clearly indicate that a central dispute between the parties concerns the status of Nationwide. Nationwide contends that if Hickman and Adco[2] are found to be negligent, then Nationwide does not have, under the terms of the Robinsons' insurance policy, any liability unless the Robinson's verdict exceeds the $500,000 of liability coverage held by Adco and Hickman.[3] Adco and

Hickman's negligence to Adco under the doctrine of *respondeat superior*.

3. The "Limits of Liability" section of the uninsured motorists endorsement to the Robinsons' policy states in part:

Hickman take a much different view. They contend that Nationwide essentially stands in the place of a phantom vehicle which allegedly was one of the causes of the accident in question and they would therefore have Nationwide considered as a potential joint tortfeasor, along with Hickman, Adco, and the County against which contribution can be sought and from which the Robinsons can seek to recover prior to exhausting the limits of Hickman and Adco's liability coverage. The Robinsons oppose Nationwide's motion because they want to avoid the possibility of two trials with conflicting results. The parties have stipulated that the uninsured motorist coverage limits of the Robinsons' policy are $20,000 per person and $40,000 per occurrence.[4] (D.I. 98.)

At oral argument, the parties agreed with the Court's observation that in addition to deciding the motion to sever, the parties want the Court to provide a declaratory judgment resolving whether Nationwide should be considered a joint tortfeasor standing in the place of the phantom vehicle. Given that the resolution of this question could substantially impact the rights and liabilities of the parties in this particular case, the Court decided to consider rendering a declaratory judgment on the issue. *See* Fed.R.Civ.P. 57 advisory committee's note.

For the reasons discussed below, the Court will deny Nationwide's motion to sever. Additionally, having concluded that Maryland law applies to any interpretation of the insurance contract between the Robinsons and Nationwide, the Court will set forth why Nationwide, under Maryland law, should not be considered to be a joint tortfeasor standing in the shoes of the phantom vehicle.

## I. FACTS

On July 24, 1984, Dale Robinson was traveling south on U.S. Route 13, otherwise known as the Dupont Highway. (D.I. 1 at ¶ 5.) Robinson was stopped in the left lane waiting for a traffic light, when his vehicle was struck from behind by the vehicle driven by Hickman. (*Id.* at ¶ 6.) Hickman was driving a vehicle owned by his employer, Adco Metals, Inc. (*Id.* at ¶ 7.) Hickman claims that he hit Robinson's vehicle because his attention was distracted by a vehicle which swerved into the left lane to avoid striking a New Castle County police car which was blocking part of the right lane during a routine traffic stop. (D.I. 59 at 3.) The identity of the vehicle which allegedly swerved in front of Hickman is unknown.

This action began when the Robinsons filed a complaint against Hickman and Adco alleging that Hickman negligently caused the accident. (D.I. 1.) Soon thereafter, the Robinsons amended their complaint to add Nationwide on grounds that the accident was caused at least in part by the negligence of unidentified vehicles. (D.I. 5.) The Robinsons seek to recover under the "uninsurance" provisions of a policy purchased from Nationwide.[5] (*Id.*)

---

"Regardless of the number of Insureds under this Insurance, the Company's liability is limited as follows:

·   ·   ·   ·   ·

(c) Any amount payable under the terms of this insurance because of bodily injury or property damage sustained in an accident by a person who is an Insured shall be reduced by

(1) all sums paid on account of such bodily injury or property damage by or on behalf of

(i) the owner or operator of the uninsured highway vehicle and

(ii) any other person or organization jointly or severally liable together with such owner or operator for such bodily injury or property damage...."

4. Throughout the remainder of the opinion the policy limits shall be referred to as $20,000/40,000. Additionally, the Court does not need to consider for purposes of this motion whether Jenny Robinson who was not a passenger in the car can recover from Nationwide for loss of services, companionship, and consortium. Therefore, for purposes of this opinion, the Court will assume that the recovery from Nationwide could be as much as $40,000.

5. The definition of "uninsured highway vehicle" in the Robinsons' policy includes "a hit-and-run vehicle" which is "a highway vehicle which causes an accident resulting in bodily injury to an Insured or property damage to property of the Insured. (a) There cannot be ascertained the identity of either the operator or owner of such highway vehicle...." [sic]

In their answer to the Robinson's amended complaint, Hickman and Adco made a cross-claim against Nationwide for contribution and/or indemnification on the basis that the unidentified vehicles were the proximate cause of the accident. (D.I. 13 at ¶ 21.) Hickman and Adco then filed a complaint against New Castle County ("the County") essentially seeking indemnification on grounds that the County's police officer negligently obstructed traffic which caused the accident. (D.I. 36.) Nationwide filed a complaint against the County on the same grounds (D.I. 42) and the County has made cross-claims against Nationwide, Adco, and Hickman. (D.I. 91.) The Robinsons have not made a claim directly against the County.

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the Robinsons are citizens of Maryland, Nationwide is an Ohio corporation with its principal place of business in Ohio, all the other defendants are Delaware citizens, corporations, or governmental entities, and the amount in controversy exceeds $10,000. Dale Robinson seeks to recover damages caused by injuries to his back, neck, and arms. He claims that to date he has had approximately $11,000 in medical expenses and $21,500 in lost wages. (D.I. 1 at ¶ 8.) Jenny Robinson seeks damages for loss of services, companionship, and consortium. (*Id.* at ¶ 9.)

## II. ANALYSIS

### A. Choice of Law

Once the parties discovered that the Robinsons were covered by a Maryland insurance policy, a difference of opinion developed as to whether Delaware or Maryland law applies to the resolution of Nationwide's motion. Nationwide contends that Delaware law applies (D.I. 79 at 5–6), but the Robinsons, Hickman, and Adco disagree. (D.I. 83 at 2–3; D.I. 84 at 4–5.) They argue that under the doctrine set forth in *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), a district court sitting in diversity jurisdiction must apply federal procedural rules and state substantive law. They proceed to claim that under federal procedural rules, this Court has the discretion to grant or deny a motion to sever. The Court agrees with the Robinsons, Hickman, and Adco.

A federal district court can sever a claim pursuant to either Rule 20(b)[6] or Rule 42(b)[7] of the Federal Rules of Civil Procedure. Nationwide did not specify upon which rule its motion to sever is based, because the original motion to dismiss or sever was made under Rule 12(b). Given the current set of claims among the parties, the motion to sever must be based upon Rule 42(b). Rule 42(b) clearly places the matter of whether to sever a claim and provide a separate trial in the discretion of the trial court. *See* 5 Moore's Federal Practice, ¶ 42.03[1], pp. 42–36 to 42–42. Therefore, this Court has the discretion to grant or deny the motion to sever and does not need to rely on the law of Delaware or Maryland on this point.

The Court does need to make a choice of law determination with respect to the issue on which the parties desire a declaratory judgment. The parties want this Court to decide whether Nationwide stands in the place of the phantom vehicle and thus potentially shares liability with Hickman, Adco, and the County as a joint tortfeasor from which the other potential joint tortfeasors would have a right of contribution

---

**6.** Rule 20(b) states:

The court may make such orders as will prevent a party from being embarrassed, delayed, or put to expense by the inclusion of a party against whom he asserts no claim and who asserts no claim against him, and may order separate trials or make other orders to prevent delay or prejudice.

**7.** Rule 42(b) provides:

The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

and against which the Robinsons could seek a satisfaction of their judgment prior to exhausting their remedies against Hickman and Adco[8] or, alternatively, that Nationwide only has to pay uninsured motorist coverage benefits, if the Robinsons recover an amount in excess of Hickman/Adco and New Castle County's liability coverage. This determination clearly impacts on the substantive rights of the parties.

■ A district court sitting in diversity must apply the choice of law principles of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Danner v. Hertz Corp.*, 584 F.Supp. 293, 295 (D.Del. 1984). Therefore, this Court must apply Delaware choice of law principles to determine whether Delaware or Maryland substantive law applies.

■ Although the Robinsons' claims against the defendants are based on allegedly tortious acts, to make the declaratory judgment sought by the parties, this Court must determine the exact nature of the contractual relationship between Nationwide and the Robinsons. The Delaware Supreme Court has decided that an action by an insured against his automobile insurance carrier to recover uninsured motorist benefits is more closely akin to a contract claim than a tort action. *Allstate Ins. Co. v. Spinelli*, 443 A.2d 1286, 1289–90 (Del. Supr.1982). Traditionally, Delaware law provides that Delaware courts should look to the jurisdiction where the contract is formed to determine issues involving the construction of a contract. *Danner*, 584 F.Supp. at 296. In *Danner* Judge Schwartz noted that the Delaware Supreme Court has indicated a move towards adopting the "most significant relationship test." *See Oliver B. Cannon & Son, Inc. v. Dorr-Oliver, Inc.*, 394 A.2d 1160 (Del.Supr.1978). *Danner* involved a plaintiff seeking to recover uninsured motorist benefits for injuries sustained in an accident which occurred in Delaware while the plaintiff was driving a car leased in New York. Judge Schwartz had to interpret the New York contract and concluded that under either the traditional rule or the "most significant relationship test," New York law applies because the place of the contract was New York, the subject matter of the contract—a leased car—was registered and principally garaged in New York, and the car would be returned to New York. 584 F.Supp. at 296. This Court holds that under the traditional rule or the "most significant relationship test," Maryland law must be used to interpret the insurance contract between Nationwide and the Robinsons because the contract was entered into in Maryland, the insured vehicles were operated and garaged primarily in Maryland, and the endorsement dealing with uninsured motorists is clearly labeled as being applicable to insurance policies issued under Maryland law.

### B. Declaratory Judgment on Status of Nationwide

Having established that Maryland law applies to any construction of the Nationwide insurance policy, the Court is confronted with the fact that Maryland courts, unlike some Delaware courts, have not directly addressed the question of whether a provider of uninsured motorist coverage stands in the place of a phantom vehicle and is therefore treated as a joint tortfeasor.[9] Despite the lack of Maryland case

---

**8.** *See* Uniform Contribution Among Tortfeasors Act adapted in Maryland in *Md.Ann.Code* art. 50 §§ 16–24.

**9.** Despite the fact that the Delaware Superior Court has written several opinions on this question, the parties' original set of briefs submitted before the discovery of the Maryland policy made it clear that some of the Superior Court judges do not agree on the answer to the question. *Compare Crystal v. Walker*, C.A. 81C–MY–97, C.A. No. 82C–JL–62 (Del.Super. January 24, 1985) (uninsured motorist coverage is not applicable unless a judgment obtained by the insured is in excess of the amount available from other insured tortfeasors) *with Brown v. Comegys*, 500 A.2d 611 (Del.Super.1985) (principles of joint and several liability and contribution among joint tortfeasors lend support to conclusion that requiring plaintiff to exhaust the other tortfeasor's liability insurance before pursuing plaintiff's uninsured motorist policy contravenes legislative policy behind the uninsured motorist statute) *and Fisher v. Nationwide Ins.*

law on this particular point, the Court concludes, after examining Maryland decisions dealing with uninsured motorist coverage on joint tortfeasors, that the Maryland Court of Appeals would hold that an uninsured motorist coverage insurer should not be considered to be a joint tortfeasor standing in the place of a phantom vehicle.

In 1941 the Maryland Legislature adopted the Uniform Contribution Among Tortfeasors Act. The Act was amended only once in 1951. *See Md.Ann.Code* art. 50 §§ 16–24 (1986 Repl.Vol.). The Maryland Court of Appeals has held that the provisions of the Act "make it clear that the Act is only applicable to a situation where there is a common liability to an injured person in tort." *Baltimore Transit Co. v. State, to Use of Schriefer,* 183 Md. 674, 679, 39 A.2d 858, 860 (1944). A federal district court in Maryland followed the *Schriefer* holding in *Zaccari v. United States,* 130 F.Supp. 50 (D.Md.1955). *Zaccari* arose out of an accident between a private citizen and a federal employee. The citizen brought suit against the government on behalf of his six-year-old daughter who was injured in the accident. The government counterclaimed against the father alleging negligence and claiming contribution. The *Zaccari* court granted the father's motion to dismiss the counterclaim because Maryland law did not allow a child to sue a parent which meant that the Joint Tortfeasors Act could not apply, given the lack of a common liability to the child shared by the government and the father. *Id.* at 51.

■ The *Schreifer* and *Zaccari* holdings make it clear that Adco, Hickman, and the County cannot seek contribution from Nationwide because of the absence of a common liability. The Robinsons' action against Hickman and Adco arises in tort. The same is true for the counterclaims between Hickman, Adco, and the County. In contrast to the tort action, the Robinsons' suit against Nationwide is undoubtedly under Maryland law a contract action by an insured against his own insurer. *See Reese v. State Farm Mut. Auto. Ins. Co.,*

285 Md. 548, 403 A.2d 1229, 1231 (1979). Therefore, Nationwide does not share a common liability in tort with the other defendants. Under *Schreifer* and *Zaccari,* this precludes the application of the Uniform Joint Tortfeasors Act which convinces this Court that the Maryland Court of Appeals would hold that Nationwide should not be treated as a joint tortfeasor.

■ Even if the Court disregards the fact that the Uniform Joint Tortfeasors Act does not apply to Nationwide, the Court would still conclude from its examination of Maryland case law dealing with uninsured motorist coverage that Nationwide should not be treated as a joint tortfeasor. Section 541(c) of the Maryland Insurance Code, *Md.Code Ann.* Art. 48A § 541 (1986 Repl.Vol.), requires minimum uninsured motorist coverage in the amount of $20,000 per person and $40,000 per occurrence. This is the amount of coverage the Robinsons had with Nationwide. (D.I. 98.) The Maryland Court of Appeals has clearly established that the purpose of uninsured motorist coverage is "that each insured under such coverage have available the full statutory minimum to exactly the same extent as would have been available had the tortfeasor complied with the minimum requirements of the financial responsibility law." *Nationwide Mut. Ins. Co. v. Webb,* 291 Md. 700, 436 A.2d 465, 474 (1981) (quoting *Webb v. State Farm Mut. Auto. Ins. Co.,* 479 S.W.2d 148, 152 (Mo.App.1972)). Thus, the purpose of uninsured motorist coverage in Maryland is to protect the party who contracts with an insurer for coverage. The purpose of the coverage is not to provide protection to third party tortfeasors such as Adco, Hickman, and the County. This interpretation of uninsured motorist coverage reflects the following position of the Maryland Court of Appeals:

> Because it is a promise by the insurer to pay its own insured, rather than a promise to its insured to pay some third party, the uninsured motorist coverage is in insurance parlance 'first party coverage' like collision, comprehensive, medical payments or personal injury protection,

Co., C.A. No. 84C–AU–21 (Del.Super. April 30,

1986) (follows and explains *Brown v. Comegys* ).

and not 'third party coverage' such as personal injury or property damage liability insurance.

*Reese*, 403 A.2d at 1231–32. The Court views this statement by the Court of Appeals as an abundantly clear indication that an uninsured motorist coverage insurer is not to be put in the place of a phantom driver for the purpose of allowing defendant tortfeasors to seek contribution.

### C. Motion to Sever

As discussed in the Choice of Law section of this opinion, this Court may exercise its discretion when deciding the motion to sever. Despite the fact that the Court has concluded that Nationwide is not a joint tortfeasor, the motion to sever will be dismissed.

■ For purposes of this motion, the parties have stipulated that the Robinsons have uninsured motorist coverage limits of $20,000/40,000. Hickman and Adco have $500,000 of liability coverage. Nationwide contends that given the amount of Hickman and Adco's liability coverage, the Robinsons' damages would have to exceed $500,000 before uninsured motorist coverage benefits are paid. (D.I. 79 at 7–8.) Nationwide believes this is so unlikely that they should not be required to remain in this case.

The Court acknowledges that Nationwide may not have to ever make an uninsured motorist coverage payment to the Robinsons, but notes that Nationwide has not recognized that even if it is not considered a joint tortfeasor, the jury could decide that the phantom vehicle was one hundred percent at fault. This would relieve Hickman, Adco and the County of any liability and the Robinsons would be able to collect their damages from Nationwide up to the policy limits.[10] Given the possibility that Nationwide may have to make a payment to the Robinsons, the Court in its discretion concludes that judicial economy and the expedient resolution of this matter will be furthered by denying the motion to sever.[11]

Finally, the Court perceives a need to respond to an argument set forth in one of the Robinsons' briefs (D.I. 83 at 7) and a partial misconception in one of Nationwide's briefs (D.I. 79 at 7–8), so the parties will have a clear understanding of a particular point of law that is relevant to the remainder of this case. The Robinsons' brief refers the Court to *McKoy v. Aetna Cas. & Sur. Co.*, 281 Md. 26, 374 A.2d 1170 (1977), and *Langston v. Allstate Ins. Co.*, 40 Md.App. 414, 392 A.2d 561 (1978). Both cases support the Robinsons' argument that if they obtain a judgment in excess of Hickman and Adco's liability coverage, then the excess can be recovered from Nationwide up to the policy limits, because the amount paid by Hickman and Adco is deducted from the total damages, instead of from the policy limits. Given changes made in 1981 to *Md.Ann.Code* art. 48A, § 541, the Court concludes that the rule established in *McKoy* and followed in *Langston* is no longer valid.

■ In 1981 the Maryland Legislature modified § 541 by adding subsection (c)(3) which states: "The limit of liability for an insurer providing uninsured motorist coverage under this subsection is the amount of that coverage less the sum of the limits under the liability insurance policies, bonds, and securities applicable to the bodily injury or death of the insured." 1981 Md.Laws 510. This subsection clearly states that any amount recovered from a tortfeasor's liability policy will be deducted from the uninsured motorist coverage policy limit in-

---

10. Nationwide may have to make a payment to the Robinsons even if the phantom vehicle is less than totally at fault. For example, if a jury determines the Robinsons' damages to be $50,000 and apportions fault in the amounts of 20% to Hickman/Adco, 20% to the County, and 60% to the phantom driver, the Robinsons will be able to recover $10,000 from both Hickman/Adco and the County. Nationwide would have to pay the $20,000 difference be-

tween the policy limit and the amount recovered from the tortfeasors. *See* footnote four.

11. The Court believes its holding is particularly appropriate in this case because the Maryland Court of Appeals has expressed its opinion that a second lawsuit against an insurer in a situation involving a tort suit against an uninsured motorist "represents neither a proper utilization of judicial resources nor a sound use of premium dollars." *Webb*, 436 A.2d at 475.

stead of from the total amount of damages. This amendment effectively invalidated the holdings in *McKoy* and *Langston.*[12] Additionally, the Nationwide policy limits liability for uninsured motorist coverage to "[a]ny amount payable under the terms of this insurance ... reduced by ... all sums paid ... by or on behalf of ... (ii) any other person or organization jointly or severally liable together with [the uninsured driver] for such bodily injury or property damage...."[13] The amount payable under the terms of this insurance refers to the $20,000/40,000 policy limits, which will be reduced by any amount recovered from Hickman and Adco. Therefore, the Nationwide limitation of liability is in harmony with § 541(c). This conclusion means that Nationwide was mistaken when it stated in one of its briefs that it is only liable if the Robinsons recover damages in excess of Hickman and Adco's $500,000 liability coverage limit. (D.I. 79 at 7–8.) This argument is based on the *McKoy* rule instead of the amended § 541(c). Instead of having liability only if the Robinsons' recovery exceeds $500,000, Nationwide only has liability if the Robinsons recover less than $40,000 from Hickman and Adco and have damages in excess of the amount recovered.

## III. CONCLUSION

Nationwide's motion to sever will be denied in the interest of judicial economy and the speedy resolution of the Robinsons' action. An order will be entered in conformity with this opinion.

12. The Maryland Court of Appeals expressed its disagreement with portions of the *Langston* decision even prior to the 1981 amendment. *See Yarmuth v. Government Emp. Ins. Co.,* 286 Md. 256, 407 A.2d 315, 319 n. 3 (Md.1979).

13. *See* footnote three for a more complete text of the "Limits of Liability" provision of the uninsured motorist endorsement.