Elizabeth RHAULT, Executrix of the Estate of Eugene J. Rhault

v.

Anthony N. TSAGARAKOS et al.

Civ. A. No. 6510.

United States District Court,
D. Vermont.

June 18, 1973.

McNamara, Fitzpatrick, Sylvester, Farrell & Maley, Burlington, Vt., for plaintiff.

Pierson, Affolter & Amidon, Burlington, Vt., for Cleveland.

Dinse, 'Allen & Erdmann, Burlington, Vt., for Tsagarakos.

Dick, Hackel & Hull, Rutland, Vt., for Safeco Ins. Co.

## OPINION

HOLDEN, Chief Judge.

This case arises from a fatal accident which occurred on Interstate 89 in Williston, Vermont, on December 4, 1970. The plaintiff's decedent, Eugene Rhault, was standing beside his auto, stopped along the highway, when a collision involving the decedent's and three other vehicles occurred. He died as a result of injuries sustained in the accident. Two of the vehicles involved were operated by defendants Tsagarakos and Cleveland. The third vehicle, which displayed an Alabama registration, left the scene of the accident and was never located. The identity of its driver is unknown.

Rhault's estate brought suit against Cleveland and Tsagarakos and against Safeco Insurance Company, the decedent's automobile insurance carrier, on the basis of an uninsured motorist clause in the insurance contract. Subsequently the plaintiff obtained a $10,000 settlement with Tsagarakos. Safeco then moved for summary judgment, contending that the Tsagarakos settlement negates its obligation under the uninsured motorist clause. These facts and the provisions of the insurance agreement are not in dispute.

The policy provisions upon which Safeco relies in support of its motion for summary of judgment state:

DAMAGES FOR BODILY INJURY CAUSED BY UNINSURED

AUTOMOBILES (Herein referred to as Uninsured Motorists) In consideration of the payment of the premium for this endorsement and subject to all the terms of this endorsement and the applicable terms of the policy, the company agrees with the named insured as follows:

INSURING AGREEMENTS

1. Damages for Bodily Injury Caused by Uninsured Automobiles
To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury', sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile;

EXCLUSIONS

This endorsement does not apply:

(a) To bodily injury to an insured with respect to which such insured, his legal representative or any person entitled to payment under this endorsement shall, without written consent of the company, make any settlement with any person or organization who may be liable therefor.

CONDITIONS

6. Limits of Liability. (a) The limit of the company's liability under this endorsement shall be the limit of bodily injury liability required by the motor vehicle financial re-

sponsibility law of the state of residence, as shown on the declarations; (b) any amount payable under the terms of this endorsement because of bodily injury sustained in an accident by a person who is an insured under this coverage shall be reduced by

(1) all sums paid on account of such bodily injury by or on behalf of (i) the owner or operator of the uninsured automobile and (ii) any other person or organization jointly or severally liable together with such owner or operator for such bodily injury including all sums paid under Bodily Injury Liability Coverage of the policy;

Safeco's position is that the Tsagarakos settlement negates its obligation on two grounds: (1) the settlement was obtained without Safeco's consent, contrary to "Exclusion (a)"; and (2) when the insurer's liability limit of $10,000 is reduced by the amount of the Tsagarakos settlement, as required by "Condition 6(b)(1)(ii)", Safeco's liability is reduced to zero.

These contentions must be measured in the light of the standard provisions relating to uninsured motorists' protection required by 23 V.S.A. § 941. This statute was enacted in 1967 and is entitled "AN ACT TO REQUIRE THE INSURANCE OF PERSONS AGAINST DAMAGES CAUSED BY UNINSURED OR UNKNOWN MOTORISTS, AND TO FIX MINIMUM LIABILITY INSURANCE COVERAGE." 1967, No. 374 (Adj.Sess.), § 1 eff. July 1, 1968. It provides:

(a) No policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle may be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein, or supplemental thereto, for the protection of persons insured thereunder who are legally entitled to recover damages, from owners or operators of uninsured or hit-and-run motor vehicles, for bodily injury, sickness or disease, including death, resulting from the ownership, maintenance or use of such uninsured or hit-and-run motor vehicle.

. . . . . .

(c) The coverage under (a) and (b) of this section shall be not less than the minimum limits of coverage required under the provisions of 23 § 801 of this title.

. . . . .

(e) If payment is made under uninsured motorist coverage, and subject to the terms of that coverage, to the extent of that payment, the insurer is entitled to the proceeds of any settlement or recovery from any person legally responsible for the damage or personal injury, as to which the payment was made, and to amounts recoverable from the assets of the insolvent insurer of the other motor vehicle."

Since the Supreme Court of Vermont has not afforded a judicial interpretation of this statute, this court must construe its meaning without the aid of state precedent.

■ It is established beyond question that contracts of liability insurance are subject to statutory provisions and are deemed to include the statutory requirements whether they are contained in the insuring agreement or not. The terms of the policy are without force to detract from the requirements of the statute. See Biller v. Meyer (7th Cir. 1929), 33 F.2d 440; Lorando v. Gethro, 228 Mass. 181, 117 N.E. 185, 188; 7 Am.Jur.2d Automobile Insurance § 211.

■ The design of the statute is to protect a responsibly insured motorist against the unfortunate hazard presented by an injury inflicted in an accident with an irresponsible operator who is uninsured or has fled the scene, leaving

the insured without recourse for the damage inflicted by an irresponsible operator. The statute has fashioned the means to benefit an insured who has provided protection for others, to obtain protection for himself. Of course he pays a premium for this protection. Thus the law attempts to provide coverage in the insured's own policy, and at his premium, where it does not exist with the other operator so that he may have at least the statutory protection in all events. And the court must construe the policy and the statutory provision to achieve the primary purpose of the enactment. American Mutual Insurance Company v. Romero, 428 F.2d 870, 873 (10th Cir. 1970).

■ To this end the standard provisions require every automobile liability insurance policy to protect the insured against injury caused by an uninsured or hit-and-run motorist, in the minimum amount of $10,000. Before an insured can recover under such coverage, he is called upon to establish only his right to a recovery from the uninsured or hit-and-run motorist. This is the plain inference to be drawn from the words of § 941(a), that automobile liability policies must provide " . . . for the protection of persons insured thereunder who are *legally entitled* to recover damages, from owners or operators of uninsured or hit-and-run motor vehicles." (emphasis added.) The insurance policy similarly provides that the company agrees "To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile."

■ The statute binds the carrier " . . . to pay the insured whatever sums he is 'legally entitled to recover' from the uninsured motorist." Kirouac v. Healey, 104 N.H. 157, 181 A.2d 634,

636 (1962); See American Mutual Insurance Company v. Romero, supra.[1] Since the thrust of the statute is that the insurance proceeds are paid by the carrier acting in the stead of the uninsured motorist, the proceeds do not exist merely as a last resort available to the plaintiff only after he has tried and failed to recover his damages from all other sources. A multi-defendant lawsuit such as this one, involving or potentially involving an uninsured or hit-and-run motorist, stands in the same procedural posture as any other lawsuit involving multiple defendants. The plaintiff's carrier simply stands jointly liable with the uninsured motorist, or in his stead, to the extent specified in the statute after responsibility and damages have been determined. That other sources of recovery may be available to the insured does not restrict his carrier's obligation, except as it may be set off against the insured's total damage.

■■ Once the policyholder has established the liability of the uninsured motorist, and has established his damages, the insurance company's undertaking is to pay the policyholder as much of the judgment as can be satisfied within the limit specified in the uninsured motorist clause. If the insured's injury exceeds that amount, he must look elsewhere for further recovery; either to the uninsured operator alone or to others who may be liable with him for the injuries sustained.[2]

■ For the purposes of any legal proceeding to establish responsibility for an accident involving an uninsured motorist, the insurance company does not stand as participant in defense of the absent or uninsured motorist. Neither the statute nor the insurance policy suggests a purpose that the insurance company should defend and indemnify the

---

1. In *American Mutual*, the court assumed without discussion that a New Mexico uninsured motorists statute, similar to Vermont's, required the insurance carrier to provide insurance on behalf of the uninsured motorist.

2. Once payment has been made under the uninsured motorist clause, it would seem the insurer may seek indemnity from the hit-and-run or uninsured motorist under 23 V.S.A. § 941(e).

uninsured or hit-and-run driver. Neither the statute nor the policy is designed for the benefit of the uninsured motorist. Their purpose is to provide the insured with a source of recovery of damages caused by an uninsured motorist. It is in the nature of a limited type of accident insurance rather than the usual indemnity contract. See Kirouac v. Healey, supra, 181 A.2d at 636.

 *Exclusion (a).* Safeco's first contention, that it must be released because the Rhault estate settled with Tsagarakos without Safeco's consent, is unavailing. The exclusion clause in Safeco's policy which would require the insurer's consent to any settlement with others liable with the uninsured motorist in multiparty actions, seeks to give the defendant Safeco complete control of the plaintiff's action. Such authority is not conferred by the statute.

Indeed, such authority is in conflict with the purpose implicit in the statute that multiparty litigation involving an uninsured motorist should stand on the same procedural footing as any lawsuit involving multiple defendants. To allow the carrier such control over this litigation would place the litigation procedurally apart from the typical personal injury action involving a single plaintiff and several defendants, in which the plaintiff is free to negotiate separately with each defendant.

Insofar as the clause restricts the insured's right to compromise and settle his claim against financially responsible motorists who might be liable to him, it is contrary to the purpose of the statute and against its policy. To permit third party settlement to work a forfeiture of the uninsured motorist protection would destroy the very purpose which the legislature sought to achieve—financial responsibility to the extent of the satisfactory coverage for such damage the insured is legally entitled to recover from an uninsured motorist. To the extent that Exclusion (a) obstructs this result, it is in conflict with 23 V.S.A. § 941, and without force and effect.[3] See Robey v. Safeco Insurance Co., 270 F.Supp. 473 (D.Ark.1967).

 *Condition 6(b)(1)(ii).* Safeco's second contention, that its potential liability must be reduced by the amount of the Tsagarakos settlement, is also unavailing. If Safeco's liability were reduced by the amount of that settlement, the coverage afforded the plaintiff, on behalf of the hit-and-run Alabama vehicle, would be reduced to zero. This application of the policy would result in a direct reduction in coverage below the $10,000 minimum specified in 23 V.S.A. § 941(c). It would have the further effect of assigning the risk which the statute imposes upon Safeco, to other tort feasors who might be jointly liable with the hit-and-run operator for the wrongful death of the plaintiff's decedent. Such results are equally offensive to the purpose of the statute and are invalid. American Mutual Insurance Company v. Romero, supra, 428 F.2d at 873; see also Tassel v. Horace Mann Insurance Company, 207 N.W.2d 348 (Minn. Sup.Ct., 1973). As in any multi-defendant action, any sum recovered prior to judgment from one defendant will be credited against the total judgment after damages are assessed. The defendant Safeco's liability cannot be determined until the total amount of the plaintiff's damages are known and for what part of such recovery, if any, the hit-and-run motorist is legally responsible.

The motion of Safeco Insurance Company for summary judgment is denied.

---

3. It would seem, however, that where the plaintiff settles with the uninsured motorist, the policy provision requiring the carrier's consent to such a settlement might not be inconsistent with the statute because of the effect such a settlement might have on the carrier's right under § 941(e) to subrogation against the uninsured motorist.