# LINDA McKOY *v.* AETNA CASUALTY & SURETY COMPANY, INC.

[No. 160, September Term, 1976.]

*Decided July 15, 1977.*

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Aaron M. Levine,* with whom was *Eric M. May* on the brief, for appellant.

*William B. Spellbring, Jr.,* with whom were *Kevin J. McCarthy* and *O'Malley, Miles, Farrington & McCarthy* on the brief, for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

This case involves the construction of a "setoff" clause contained in the uninsured motorist endorsement of an automobile liability insurance policy issued by the Aetna Casualty & Surety Company, Inc.

Plaintiff Linda McKoy, while driving in the District of Columbia, was struck and seriously injured by a negligent motorist. Mrs. McKoy alleged that her damages were substantially in excess of $20,000. The tortfeasor, who was a resident of the District of Columbia, carried liability insurance with the Government Employees Insurance Company (GEICO). The terms of this policy limited GEICO's liability to $10,000 for the personal injuries suffered by Mrs. McKoy. This was the minimum amount of insurance then required in the District of Columbia. However, since the limits of the tortfeasor's insurance were less than $20,000, he was deemed an uninsured motorist under the terms of the uninsured motorist endorsement in plaintiff's automobile liability insurance policy with Aetna Casualty & Surety Company, Inc.

GEICO subsequently paid the full $10,000 in satisfaction of its obligation. Mrs. McKoy then made a claim for further indemnification under the uninsured motorist endorsement of her insurance contract with Aetna. She claimed that Aetna's potential liability extended to the face amount of this endorsement, $20,000. Aetna, on the other hand, maintained that it was allowed to set off the payment made to the plaintiff by GEICO against the face amount of the endorsement in determining the limits of its liability, relying on the following clause contained in Aetna's uninsured motorist endorsement:

"III. LIMITS OF LIABILITY

\* \* \*

"(d) Any amount payable to an insured under the terms of this insurance shall be reduced by (1) all sums paid to such insured for bodily injury or property

damage by or on behalf of the person or
organization legally liable therefor . . . ."

The plaintiff then brought this action in the Circuit Court
for Prince George's County, seeking a declaratory judgment
interpreting the uninsured motorist provision of her policy
with Aetna. Mrs. McKoy argued that the proper
interpretation of the setoff clause requires that amounts
payable from other sources be set off against the *total*
damages of the injured party, thereby preventing double
recovery, but that the setoff clause has no effect on the face
value of the endorsement.[1]

The circuit court held that the setoff clause allowed Aetna
to reduce the face amount of its uninsured motorist coverage
and that the plaintiff could only recover from Aetna up to
the $10,000 difference between the amount paid under the
GEICO policy and the face value of the uninsured motorist
endorsement of the Aetna policy. Plaintiff took an appeal to
the Court of Special Appeals, and, prior to a hearing in that
court, we granted a writ of certiorari.

The pertinent parts of the policy provide as follows:

"I. UNINSURED MOTORISTS COVERAGE

(Damages for Bodily Injury and Property Damage
Caused by Uninsured Highway Vehicles)

"The Company will pay all sums which the insured
or his legal representative shall be legally entitled
to recover as damages from the owner or operator
of an uninsured highway vehicle because of bodily
injury or property damage, caused by accident and
arising out of the ownership, maintenance or use of
such uninsured highway vehicle; provided, for the

---

1. In the alternative, Mrs. McKoy argued that the setoff clause was void
since it violated the mandate of Maryland Code (1957, 1972 Repl. Vol., 1976
Cum. Supp.), Art. 48A, § 541, which required insurance carriers to include
a *minimum* of $20,000 of uninsured motorist coverage in each automobile
liability insurance contract they wrote. Mrs. McKoy argued that the effect
of the setoff clause was to reduce the coverage below the minimum required
by statute. However, in light of our construction of the provisions of the
insurance contract between Aetna and Mrs. McKoy, it is not necessary for
us to reach this question.

purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration.

\* \* \*

"III. LIMITS OF LIABILITY

"Regardless of the number of insureds under this insurance, the company's liability is limited as follows:

(a) The limit of bodily injury liability stated in the schedule as applicable to 'each person' is the limit of the company's liability for all damages because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting 'each person,' the limit of liability stated in the schedule as applicable to 'each accident' is the total limit of the company's liability for all damages because of bodily injury sustained by two or more persons as the result of any one accident.

\* \* \*

(d) Any amount payable to an insured under the terms of this insurance shall be reduced by (1) all sums paid to such insured for bodily injury or property damage by or on behalf of the person or organization legally liable therefor and (2) the amount paid and the present value of all amounts payable to such an insured under any workmen's compensation law, exclusive of non-occupational disability benefits."

Clearly, in clause III(d), "any amount payable" under the policy is to be reduced by sums paid to the insured on behalf

of the tortfeasor. The issue is: To what do the words "any amount payable" refer? Aetna maintains that this phrase in clause III(d) refers back to the coverage limit stated in clause III(a), so that the GEICO payment must be subtracted from the $20,000 stated coverage of the policy. Mrs. McKoy argues that "any amount payable" refers to the amount payable under clause I, the main clause of the endorsement, in which Aetna covenants to pay "all sums which the insured . . . [is] legally entitled to recover." Thus, under Mrs. McKoy's interpretation, the amount paid by GEICO would be set off against the total damages incurred by Mrs. McKoy, but Aetna's potential liability for those damages to which Mrs. McKoy remained entitled would be the face amount of the endorsement, $20,000.

When the structure of the endorsement and the arrangement of the various clauses are considered, we believe that clause III(d) should be construed as providing for a setoff against the total damages suffered and not against the face value of the endorsement. For like constructions of similar provisions in uninsured motorist endorsements, *see, e.g., American Insurance Co. v. Tutt,* 314 A. 2d 481 (D.C. 1974); *Michigan Mutual Liability Co. v. Karsten,* 13 Mich. App. 46, 163 N.W.2d 670 (1968).

Section I, "Uninsured Motorist Coverage," sets out the basic liability of Aetna, to pay all damages which the insured is legally entitled to recover resulting from an accident with an uninsured motorist. Section III, entitled "Limits on Liability," begins "the company's liability is limited as follows." This strongly suggests that the limitations which follow are to be understood as limits on the primary liability articulated in Section I.

Section III(a) then limits liability to $20,000 per person. Sections III(b) and (c) concern limits on property damage and claims made under other insurance. Finally, Section III(d) contains the setoff clause. There is no indication that III(d) is in any way subordinated to III(a). Both clauses stand on equal footing, and both must therefore be understood as independently modifying the primary liability of Section I. That is, amounts paid to an insured on behalf of

the tortfeasor shall be deducted from "all sums which the insured . . . [is] legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle." Under the terms of this contract the setoff clause, III(d), applies to the total damages incurred and is not a further limitation upon the $20,000 limit set forth in clause III(a).

Even assuming that the interpretation of the policy urged upon us by Aetna is an equally reasonable one, this would, at best, create an ambiguity. In such situations, ambiguities are resolved against the author of the instrument. As Judge Hammond stated for the Court in *Penn., Etc., Ins. Co. v. Shirer*, 224 Md. 530, 537, 168 A. 2d 525 (1961):

> "However, if the insurance company, in attempting to limit coverage . . ., failed to make its intended meaning clear and drew an ambiguous clause, that ambiguity would be resolved against it as the one who drafted the instrument, as is true in the construction of contracts generally, *Ebert v. Millers Fire Insurance Co.*, 220 Md. 602, 611, and cases cited; *Employers' Liability Assurance Corporation, Ltd. v. Reed's Refrigeration Service, Inc.*, 222 Md. 49, 54."

*Accord, Peoples Life Ins. Co. v. Jerrell*, 271 Md. 536, 542, 318 A. 2d 519 (1974), and cases there cited.

> *Judgment of the Circuit Court for Prince George's County reversed and case remanded to that court for entry of a judgment consistent with this opinion.*
>
> *Appellee to pay costs.*