Christopher G. **MULLISS**

v.

**AMERICAN PROTECTION INSURANCE COMPANY and New Hampshire Insurance Co.**

**Civ. A. No. 84–178.**

United States District Court,
D. Vermont.

Feb. 4, 1987.

Samuel H. Press, Samuelson, Portnow & Little P.C., Burlington, Vt., for plaintiff.

William H. Quinn, Pierson, Affolter & Wadhams, Burlington, Vt., for defendant American Protection Ins. Co.

William H. Pearson, Downs, Rachlin & Martin, South Burlington, Vt., for defendant New Hampshire Ins. Co.

COFFRIN, Chief Judge.

This diversity action comes before us on cross-motions by plaintiff Mulliss ("plaintiff") and defendant American Protection Insurance Co. ("defendant") for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Both parties seek a determination of defendant's liability for uninsured motorist benefits under a policy issued by defendant and cover-

ing plaintiff.[1] The resolution of this issue hinges on an interpretation of the "offset-reduction" clause contained in the uninsured motorist coverage provisions of defendant's policy.

Defendant also asks us to determine third-party defendant New Hampshire Insurance Company's liability to plaintiff on an automobile liability policy it issued to third-party defendant Gerard A. Lavoie, Jr. Finally, plaintiff has made a separate motion pursuant to Federal Rule of Civil Procedure 37 to compel discovery against defendant regarding certain materials relating to plaintiff's claims against defendant for tortious refusal to honor insurance policy provisions. For the reasons stated below, we GRANT plaintiff's motion for partial summary judgment and DENY defendant's motion. We also GRANT plaintiff's motion to compel discovery.

## BACKGROUND

For the purpose of deciding the instant motions for partial summary judgment, the parties to this action have stipulated to or have admitted by failing to object to the following facts.

On May 22, 1983, the plaintiff in this action, Christopher Mulliss, was severely injured when a motorcycle upon which he was riding as a passenger was involved in an accident. The accident was caused by the negligence of the motorcycle's driver, Gerard A. Lavoie, Jr. Lavoie was also the owner of the motorcycle. At the time of the accident, the motorcycle was insured under a policy issued by the Universal Underwriters Insurance Company ("UUI"). This policy carried a bodily injury liability limit of $20,000 per person per accident. This coverage is the minimum coverage required for automobile liability policies in Vermont. Vt.Stat.Ann. tit. 23, § 801(a). At the time of the accident, Lavoie also had an automobile liability insurance policy is-

sued by the New Hampshire Insurance Company. ("NHI"). This policy also had a stated bodily injury liability limit of $20,000 per person per accident. Plaintiff was an insured under the provisions of his mother's automobile liability insurance policy, issued by defendant, which provided up to $40,000 of bodily injury coverage to insured individuals injured by uninsured ("UM") or underinsured ("UIM") motorists. The relevant portions of defendant's policy are laid out in our discussion below. After the accident, all three of the insurance companies involved denied coverage under their respective policies for plaintiff's injuries.

On May 31, 1984, plaintiff filed suit against Lavoie in Vermont Superior Court alleging negligence by Lavoie and demanding damages in excess of $60,000. On that same day, plaintiff filed this diversity action in this court against defendant American Protection. Plaintiff's complaint alleges breach of contract due to defendant's failure to pay UIM benefits under the terms of its policy, tortious refusal to pay policy benefits, tortious breach of fiduciary duties, and tortious interference with a protected property interest. Plaintiff's ad damnum seeks $100,000 compensatory and $200,000 punitive damages, plus attorney's fees.

In its answer, defendant asserts, inter alia, that plaintiff is not entitled to UIM benefits under defendant's policy until all of the tortfeasor's liability policies have been exhausted by payment. Subsequent to its answer, defendant filed a consolidated amended third party complaint against third-party defendants Lavoie, UUI and NHI. This complaint asks the court for a declaratory judgment that UUI and NHI are liable to plaintiff up to the full limits of the liability policies they issued to Lavoie; that defendant is not liable to plaintiff for UIM benefits until UUI and NHI have fully paid under their policies; and that defend-

1. The policy issued by defendant uses the term "Uninsured Motorists Coverage" in the policy itself. Actually, the policy provides for both uninsured and *under*insured motorist coverage. Traditionally, an insured was only entitled to uninsured motorist benefits if the tortfeasor car-

ried no liability insurance whatsoever. Under the terms of defendant's policy, the insured is entitled to underinsured benefits if the tortfeasor carries a lower limit of bodily injury liability insurance than the uninsured motorist coverage limit in defendant's policy.

ant's UM policy liability limit of $40,000 should be reduced dollar for dollar by any sums paid plaintiff by Lavoie or his liability insurers, under the terms of the offset-reduction clause in defendant's policy. In its answer to defendant's consolidated amended third-party complaint, NHI denies any liability under the policy it issued to Lavoie and seeks declaratory relief to that effect.

On October 1, 1985, plaintiff and Lavoie entered into a "Covenant Not To Execute" in which plaintiff, in return for the payment of $20,000 by UUI on behalf of Lavoie, agreed to dismiss his Vermont Superior Court suit and to release all claims he may have had against Lavoie and UUI. Subsequent to this agreement, third-party defendant UUI was dismissed by order of this court dated October 15, 1985 in accordance with a stipulation of the parties.

Finally, although it is nowhere stipulated by the parties, both assume for the purpose of deciding their respective motions for partial summary judgment that plaintiff's damages are in excess of $80,000. (See Plaintiff's Memorandum at 3, Defendant's Memorandum at 2).

## DISCUSSION

A) Interpretation of the "offset-reduction" Clause.

The relevant portions of defendant American Protection's policy regarding coverage of insured individuals for bodily injury inflicted by uninsured or underinsured tortfeasors are as follows:

**PART C—UNINSURED MOTORISTS COVERAGE**

**INSURING AGREEMENT**

We will pay damages which a **covered person** is legally entitled to recover, from the owner or operator of an **uninsured motor vehicle** because of bodily injury:

1. Sustained by a **covered person;** and

2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the **uninsured motor vehicle.**

.    .    .    .    .

**"Uninsured motor vehicle"** means a land motor vehicle or trailer of any type:

.    .    .    .    .

2. To which a bodily injury liability bond or policy applies at the time of the accident. In this case its limit for bodily injury liability must be less than the limit of liability for this coverage.

.    .    .    .    .

**LIMIT OF LIABILITY**

The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one accident.

.    .    .    .    .

*Any amounts otherwise payable for damages under this coverage* shall be reduced by all sums:

1. Paid or payable because of the bodily injury by or on behalf of persons or organizations who may be legally responsible. (emphasis supplied).

The last quoted provision is commonly known as an "offset-reduction" clause. The parties' dispute concerning defendant American Protection's liability under its uninsured motorist's coverage centers upon the interpretation of the offset-reduction clause.

Defendant argues that under the terms of the offset-reduction clause in its policy, its maximum liability to plaintiff for uninsured motorist benefits is the $40,000 policy limit *less* any amounts collected by plaintiff from the tortfeasor's liability carriers. While defendant makes only minimal reference to the language of the policy itself, defendant implicitly interprets the phrase "Any amounts otherwise payable for damages under this coverage" in its offset-reduction clause to mean that "the total amount of coverage provided, if payable" or "the limit of liability, if payable" by the insurance company "shall be reduced by all sums paid" for bodily injury by the tortfeasor or his insurer. Defendant argues

vigorously that such an interpretation of the language of the offset-reduction clause is in accord with the minimum underinsurance requirements of Vt.Stat.Ann. tit. 23, §§ 941(e) and (f).

Plaintiff argues that the "Any amounts otherwise payable for damages" language of the offset-reduction clause, when read in conjunction with the broad language of the "Insuring Agreement" which provides that "[defendant] will pay *damages* which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury", indicates that defendant may only deduct payments made by the tortfeasor or his insurance carrier from the *total amount* of plaintiff's damages, and not simply from defendant's policy limit for uninsured motorist coverage. In support of its position, plaintiff cites numerous state court decisions interpreting similar language in offset-reduction clauses. Plaintiff also cites the well-established rule of insurance policy construction which mandates that ambiguous clauses in insurance policies which may reasonably be subject to two interpretations must be liberally construed in favor of the insured.

In a supplemental memorandum in support of his motion for partial summary judgment, plaintiff also brings to our attention a recent "Declaratory Ruling" by the Vermont Department of Banking and Insurance. This ruling construes Vermont's underinsured motorist statute, Vt.Stat. Ann. tit. 23, § 941, in the manner urged by plaintiff in this case. Defendant's reply to this supplemental memorandum asserts that this "Declaratory Ruling" is really nothing more than an advisory opinion because it was not decided pursuant to an actual case or controversy. Defendant asserts that such an advisory opinion is entitled to no weight and alleges that the opinion was actually drafted by an attorney for a party who espoused such a position in an *ex parte* proceeding without an opportunity for adverse comment. Furthermore, defendant objects on several grounds to the legal reasoning of this ruling.

For purposes of clarification, the parties respective interpretations of the offset-reduction clause may be summarized as follows:

[Plaintiff's damages are assumed to be $80,000.]

| Mulliss' Position | | American Protection's Position | |
|---|---|---|---|
| | | Mulliss' UIM Coverage: | $40,000 |
| Mulliss' Damages: | $80,000 | | |
| Less Payments by Tortfeasor Ins.: | $40,000 | Less Payments by Tortfeasor Ins.: | $40,000 |
| American Protection's Liability: | $40,000 | American Protection's Liability: | $0.00 |

In order to determine if plaintiff is entitled to payment under the UIM provisions of defendant's policy, we look first to the language of the policy itself. *See Utica Mutual Insurance Co. v. Central Vermont Rwy, Inc.*, 133 Vt. 292, 294, 336 A.2d 200 (1975) ("In examining disputed contract language, seemingly clear and unambiguous, the cardinal rule of construction promotes a reading of the phrase at issue in its plain, ordinary, and popular sense".) As stated above, the crux of the dispute between the parties in this case is the meaning of the language used in the offset-reduction clause of Part C of the policy.

In the instant case, the disputed policy language appears to be susceptible of two possible interpretations. On the one hand, we agree with plaintiff that the word "damages" in the offset-reduction clause could easily be interpreted as referring to all "*damages* which a covered person is legally entitled to recover", (emphasis supplied) as stated in the broad language of the Insuring Agreement of Part C. On the other hand, it is possible to interpret the words "damages under this coverage" in the offset-reduction clause to mean simply that the $40,000 limit of coverage under the policy shall be reduced by all payments made by or on behalf of the tortfeasor.

Having determined that the language in this exclusionary clause is susceptible to two different interpretations, we are bound to adopt the construction which is most favorable to the insured. *E.g. Utica Mutual*, 133 Vt. at 295, 336 A.2d 200 (citing *Town of Troy v. American Fidelity Co.*, 120 Vt. 410, 143 A.2d 469 (1958)); *Stone-*

*wall Insurance Co. v. Moorby,* 130 Vt. 562, 566, 298 A.2d 826 (1972) ("[It is a] fundamental rule that a policy of insurance must be construed liberally in respect to the person insured and strictly with respect to the insurer".) (quoting *Valente, Gdn. v. Comm. Ins. Co.,* 126 Vt. 455, 459, 236 A.2d 241 (1967)). In accord with this rule of construction, we adopt plaintiff's interpretation of the meaning of the word "damages" in the offset-reduction clause and hold that defendant is only entitled to a deduction for tortfeasor payments from the *total amount of damages* suffered by plaintiff, and may not deduct such payments simply from defendant's policy limit of $40,000.

No Vermont Supreme Court cases interpreting the offset-reduction clauses in automobile insurance policies have come to our attention through either the memoranda of the parties or our own search of the case law.[2] Courts in several other jurisdictions have considered this issue and have interpreted offset-reduction policy language nearly identical to defendant's in the same manner as we have here.

■ In *McCoy v. Aetna Casualty & Surety Co.,* 281 Md. 26, 374 A.2d 1170 (1977), the Maryland Court of Appeals was confronted with an offset-reduction clause which provided that "[a]ny amount payable to an insured under the terms of this insurance shall be reduced by … all sums paid to such insured [by the tortfeasor or his insurer]." 374 A.2d at 1171. The general

uninsured coverage clause in the policy directed the company to "pay all sums which the insured or his legal representative shall be legally entitled to recover as damages". *McCoy,* 374 A.2d at 1172. After reading the general coverage clause and the offset-reduction clause together, the court concluded that the amount paid in settlement by the tortfeasor's insurer should be set off against the *total damages* incurred by the insured, rather than simply against the liability limits of the uninsurance coverage. The court found that the structure of the policy indicated that the words "any amount payable" in the offset-reduction clause referred to the general coverage provision, which promised to "pay all sums", i.e. to reimburse the insured up to his total damages. The court also noted that the policy interpretation claimed by the insurer created an ambiguity at best, which had to be resolved against the insurer which had drafted the policy in the first instance. *Id.* 374 A.2d at 1173. Likewise in the instant case, we find that the use of the word "damages" in American Protection's offset-reduction clause modifies the "Insuring Agreement" clause of Part C, in which the insurer agrees to "pay damages" which the insured is legally entitled to recover".[3] *See also Michigan Mutual Liability Co. v. Karsten,* 13 Mich.App. 46, 163 N.W.2d 670, 672 (1968) (based on policy language and structure, settlement amount from insured tortfeasor was subtracted

**2.** Neither the decisions by this court in *Goodrich v. Lumbermens Mut. Casualty Co.,* 423 F.Supp. 838 (D.Vt.1976), and in *Rhault v. Tsagarakos,* 361 F.Supp. 202 (D.Vt.1973), nor the recent decision by the Vermont Supreme Court in *Muir v. Hartford Accident and Indemnity Co.,* ___ Vt. ___, 522 A.2d 236 (1987), are controlling on the issue before us today. In all three of these cases, it appears the courts were concerned with guaranteeing that the injured insured would receive at least the minimum statutory UM coverage under each policy issued, as required by Vermont law. Vt.Stat.Ann. tit. 23, §§ 801, 941. In this case, plaintiff has already received the $20,000 minimum statutory coverage in the form of his recovery from one of the tortfeasor's insurers, UUI. We are addressing whether the insured's UM benefits are recovera-

ble under the terms of defendant's policy to the extent that plaintiff has not been fully compensated for his damages.

However, we do find equitable support for plaintiff's position by implication in all three of the above-cited cases. In each of the opinions, the courts affirm that UM coverage exists for the benefit of the injured insured and that UM provisions must be construed liberally in accord with the remedial purposes of UM coverage. *Muir,* at ___, 522 A.2d 238–239; *Goodrich,* 423 F.Supp. at 842; *Rhault,* 361 F.Supp. at 205–06.

**3.** This interpretation is consistent with the "Limit of Liability" clause in Part C of defendant's policy. $40,000 is still defendant's "maximum limit of liability for *all damages* resulting from any one accident." (emphasis supplied).

from the total damages suffered by injured insured in the accident).

In *Gomolka v. State Auto Mut. Ins. Co.*, 15 Ohio St.3d 27, 472 N.E.2d 700 (1984), the Ohio Supreme Court was called upon to interpret an offset-reduction clause which read as follows:

> Any amount payable under the Uninsured Motorists Coverage because of bodily injury sustained in an accident by a person who is an insured under this coverage shall be reduced by
>
> (1) all sums paid on account of such bodily injury or by or on behalf of (i) the owner or operator of the uninsured highway vehicle....

*Id.*, 472 N.E.2d at 702. The insurance company argued that the words "any amount payable" should be interpreted to mean "the total amount of coverage provided, if payable". *Id.* The insured asserted that the policy language meant "any damages compensable" and argued that the UM insurer could only deduct tortfeasor payments from the insured's total amount of damages. *Id.* 472 N.E.2d at 703. The court agreed with the insured's interpretation.

> The [insured's] interpretation ... equates "amount payable" to "damages compensable" by looking to the plain meaning of the policy's terms and by focusing on the nature and purpose of uninsured/underinsured motorist coverage. When purchasing this coverage, an insured expects to be protected against a loss caused by another that is not covered by that other person's insurer. Thus, an "amount payable" under uninsured/underinsured motorist coverage is an *amount of damages suffered* by the insured, which amount is greater than the insurance coverage held by the party causing the damages.

*Id.* (emphasis in original). We agree with the Ohio court's reasoning. This reasoning applies all the more forcefully to the language in American Protection's policy since, unlike in *Gomolka*, defendant's policy includes the word "damages" after the words "any amounts ... payable" in the offset-reduction clause.

By way of contrast, one year after its decision in *Gomolka*, the Ohio Supreme Court was again called upon to interpret the language used in an offset-reduction clause. In *James v. Michigan Mutual Insurance Co.*, 18 Ohio St. 386, 481 N.E.2d 272 (1985), the offset-reduction clause in the policy being interpreted read "the *limit of liability shall be reduced* by all sums paid by or on behalf of persons or organizations who may be legally responsible". *Id.* 481 N.E.2d at 275 (emphasis in original). The Ohio court held that the plain meaning of this language entitled the defendant UM insurer to deduct the amount already paid to the injured plaintiff by the underinsured tortfeasor's insurance carrier from defendant's UM coverage limit, rather than from the higher amount of the injured plaintiff's damages. The court also directly compared the language used in the offset-reduction clause in Michigan Mutual's policy, which it found to be neither ambiguous nor subject to differing interpretations, with the clause at issue in *Gomolka*, which the *Michigan Mutual* court characterized as "a provision that did not *clearly* provide for setoff against the limit of uninsured/underinsured motorist coverage, when construed in favor of the insured, [and therefore] did not entitle the insurer to such setoff." *Id.* (emphasis in original). *See also LaFrange v. United States Services Auto Ass'n.*, 700 S.W.2d 411 (Ky. 1985) (holding that offset-reduction policy language identical to that in *Michigan Mutual* case was unambiguous and entitled UM insurer to deduct tortfeasor payments directly from its UM coverage limit, and not from the higher total of the injured insured's damages). Because American Protection's offset-reduction clause language was ambiguously worded, as in *Gomolka*, and not unambiguous, as in *Michigan Mutual* and *LaFrange*, the policy language must be interpreted in the plaintiff insured's favor.

We note briefly that plaintiff and defendant have each argued that its interpretation of the disputed offset-reduction clause language is in accord with Vermont's uninsured motorist statute, Vt.Stat.Ann. tit. 13,

§ 941(f). Yet an interpretation of that statute is not necessary in this case. While it is true that "contracts of liability insurance are subject to statutory provisions and are deemed to include the statutory requirements whether they are contained in the insuring agreement or not ... [t]he terms of the policy are without force to detract from the requirements of the statute", *Rhault v. Tsagarakos*, 361 F.Supp. 202, 205 (D.Vt.1973), these "statutory minimums" are not at issue in the motions before us. It is self-evident that a liability insurance policy may provide more coverage than the statutory minimum requires.[4] Thus while defendant's interpretation of the word "damages" in its offset-reduction clause may comport with the minimum statutory coverage requirements of Vt. Stat.Ann. tit. 13, § 941(e) and (f), we determine that the policy language itself mandates greater coverage than the alleged statutory minimum.[5] Therefore defendant may setoff tortfeasor payments only against the insured's total damages, rather than against the defendant's limit of liability under the policy.[6]

### B) Liability of Third-Party Defendant New Hampshire Insurance

■ Defendant has asked us to determine that third-party defendant New Hampshire Insurance company is liable to the full extent of the automobile liability policy it issued to tortfeasor Lavoie. The impetus for this motion, and for defendant's joinder of New Hampshire as a third-party defendant, was defendant's assertion that if Universal was liable for $20,000 in damages and New Hampshire was liable for another $20,000, then defendant's UM liability would be reduced to zero under the offset-reduction clause in its policy. We have already determined that the offset-reduction clause only allows defendant to deduct tortfeasor insurance payments from plaintiff's total damages, rather than from defendant's UM liability limit of $40,000. Furthermore, because the parties have considered for the purposes of this motion that plaintiff's damages are arguably in excess of $80,000, defendant would be liable to plaintiff for the full $40,000 amount of its UM policy limit whether or not New Hampshire is liable on its policy.

Under these circumstances, a determination of New Hampshire's liability is not ripe for ajudication. Plaintiff has not requested a determination of New Hampshire's liability, and in fact New Hampshire is not even a named party in plaintiff's complaint. Given our interpretation of the

---

4. In *LaFrange, supra,* the Kentucky Supreme Court noted that "[o]f course, [an] insurance contract may provide broader coverage than that required by ... statute". 700 S.W.2d at 413. The court went on to note that the question courts must answer is whether the policy language at issue in a particular case does, in fact, confer "broader coverage". In the instant case, we have concluded that the policy language did provide broad coverage, independent of whether such coverage is required by statute in Vermont or not.

5. Defendant's argument that *Rhault* is not controlling in this case on the issue of the construction of section 941(f) of the Vermont Uninsured Motorist Statute is not unconvincing. However, it is not necessary for us to interpret that statute and the amendments made to it since this court's decision in *Rhault* in order to decide the instant motions for summary judgment. Accordingly, we do not discuss the interpretation each party gives to Vt.Stat.Ann. tit. 13, § 941(f). We also see no reason to endeavor to resolve issues raised in the parties' supplemental memoranda concerning the validity of the Vermont Department of Banking and Insurance's recent "Declaratory Ruling" and the weight the Vermont Supreme Court would give to the ruling.

6. Because our decision is based on an interpretation of the insurance policy language itself, and not on the minimum statutory requirements of Vermont's uninsured motorist statute, most of the cases cited by defendant in support of its interpretation of the offset-reduction clause are inapplicable to our decision here. The courts in decisions cited by defendant relied heavily on *statutory interpretation* in order to decide for the defendant insurance companies. *See e.g., Connolly v. Royal Globe Ins. Co.,* 455 A.2d 932 (Me.1983) (decision based explicitly on legislative intent in enacting uninsured motorist statute, no recitation of policy language); *Vigneault v. Travelers Ins. Co.,* 118 N.H. 75, 382 A.2d 910 (1978) (statutory interpretation controlling, no interpretation of offset-reduction clause policy language).

offset-reduction clause in defendant's policy, defendant is only interested in establishing New Hampshire's liability if plaintiff's damages are found to be more than $20,000 but less than $60,000, a determination which has yet to be made. Therefore, given the present posture of the case, it is unnecessary to decide New Hampshire's liability under the policy it issued to Lavoie.

### C) Plaintiff's Motion to Compel Discovery

In a separate motion filed on October 28, 1985, plaintiff has asked the court, pursuant to Rule 37 of the Federal Rules of Civil Procedure, to compel discovery of certain documents in defendant's possession relating to plaintiff's claims of defendant's bad-faith refusal to honor the terms of its UM endorsement. This motion may be moot by now, but having received no memorandum in opposition from defendant, plaintiff's motion to compel is granted pursuant to Rule 5 of the local rules of procedure for this court. Defendant shall supply the documents requested within fourteen days from the date of this order, if it has not already done so.

### CONCLUSION

For all the forgoing reasons, plaintiff's motion for partial summary judgment is GRANTED. Defendant's motion for partial summary judgment is DENIED. We also GRANT plaintiff's motion to compel discovery. Defendant American Protection Insurance Company shall supply the documents requested on or before fourteen days from the date hereof.