**Martin D. VICTOR, III; Patricia Victor, Plaintiffs,**

v.

**STATE FARM FIRE AND CASUALTY COMPANY, Defendant.**

No. S–6524.

Supreme Court of Alaska.

Jan. 5, 1996.

---

Raymond A. Nesbett, Raymond A. Nesbett, P.C., Anchorage, for Plaintiffs.

David S. Carter, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, Pamela A. Okano, Reed McClure, Seattle, Washington, for Defendant.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

## OPINION

MATTHEWS, Justice.

### I. FACTS AND PROCEEDINGS

This case comes to us on certification from the United States District Court for the District of Alaska. We agreed to answer the following question:

> Under Alaska's Mandatory Motor Vehicle Insurance Act, may the insurer reduce its policy limit for uninsured and underinsured motorist coverage by the amount of any payment the insured receives from or on behalf of a joint tortfeasor when the policy limit is lower than the amount of the insured's compensable damages attributable to the fault of the uninsured or underinsured motorist?

The District Court's statement of facts and discussion of applicable law which accompanied the certification request is set forth in the appendix. Briefly, the facts are as follows: Martin Victor was injured in an automobile accident. He stopped his vehicle suddenly in order to avoid a wheel thrown from a trailer towed by a vehicle driven by Ronald Smith. In the process of making this emergency stop, Victor's vehicle was struck from behind by a vehicle driven by Norman Lichter. Victor settled a claim for his personal injuries against Lichter for $50,000. Smith was uninsured. Victor sued Smith and received a default judgment in excess of $300,000. Victor has uninsured motor vehicle coverage of $100,000 per person written by State Farm Fire & Casualty Company. He sued State Farm to collect this coverage in superior court; the case was removed to the United States District Court, which ordered the parties to arbitrate Victor's claim in conformity with policy language. The arbitrators determined that Victor incurred damages totalling $293,626.80 and that Smith was 75% at fault and Lichter 25% at fault. State Farm then tendered $41,469.55, claiming that this was full payment based on Victor's $100,000 policy limit, less an offset for the $50,000 Victor had received from his settlement with Lichter, and $8,530.45 which State Farm had paid Victor under his medical payments coverage. Victor claims that the $50,000 paid by Lichter should be deducted from his total damages, $293,626.80, not from the $100,000 policy limit.

### II. DISCUSSION

■ We conclude that the State Farm policy involved in this case requires that the amount paid by Lichter be deducted from Victor's damages, not from his policy limits. As the Alaska Mandatory Motor Vehicle Insurance Act does not preclude coverage broader than that required under the Act, it is unnecessary to independently construe the meaning of AS 28.22.211(b)(2).[1,2]

---

1. AS 28.22.121(a) provides in relevant part: "A policy that grants the coverage required for a motor vehicle liability policy may also grant lawful coverage in excess of or in addition to the coverage specified for a policy and the excess or additional coverage is not subject to the provisions of this chapter." The only purpose for barring coverage beyond that mandatorily required would be to prevent a double recovery to reduce the temptation for fraudulent claims. See Werley v. United Servs. Auto. Ass'n, 498 P.2d 112, 116–17 (Alaska 1972). There is no risk of a double recovery here.

2. Our focus is thus on the State Farm policy rather than on the Mandatory Motor Vehicle Insurance Act. That state courts have the power to reformulate certified questions is widely recognized. A leading text states:

> In one of its earliest uses of certification, the Fifth Circuit found out, seven years after it had first ordered questions certified, that it had asked the state court the wrong question. To guard against a recurrence of this it is now the common practice of many courts, when certifying, to emphasize that the particular phrasing used in the certified question is not to restrict the state court and that the state court is free to reformulate the questions as it see fit. State courts have availed themselves of this freedom whether or not it is expressly stated in the certificate.

17A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4248, at 177–178 (1988). Other commentators state:

> Regardless of the clarity of the record, facts, and issues certified, the answering court must have the power to reformulate the questions

We set out here the relevant provisions of the uninsured and underinsured endorsement to the policy:

### SECTION III—UNINSURED AND UNDERINSURED MOTOR VEHICLE—COVERAGE U

(Damages for Bodily Injury and Property Damage Caused by Uninsured Motor Vehicles and Underinsured Motor Vehicles)

*You* have this coverage if "U" appears in the "Coverages" space on the declarations page.

We will pay damages for *bodily injury* and *property damage* an *insured* is legally entitled to collect from the owner or driver of an **uninsured motor vehicle** or an **underinsured motor vehicle.**

. . . .

### Limits of Liability

1.  **Bodily Injury**

    The amount of coverage is shown on the declarations page under "Limits of Liability—U—Bodily Injury, Each Person, Each Accident". Under "Each Person" is the amount of coverage for all damages due to *bodily injury* to one *person.* Under "Bodily Injury—Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person", for all damages due to *bodily injury* to two or more *persons* in the same accident.

    . . . .

3.  Any amount payable under this coverage for *bodily injury* shall be reduced by any amount paid or payable to or for the *insured* under:

    a.  the liability coverage;

    b.  the medical payments coverage;

    c.  any worker's compensation law.

    . . . .

7.  If the damages are caused by an ***uninsured motor vehicle,*** any amount payable under this coverage shall be reduced by any amount paid or payable to or for the **insured** by or for any *person* or organization who is or may be held legally liable for *bodily injury* to the *insured* or *property damage.*

8.  If the damages are caused by an ***underinsured motor vehicle*** the most we pay will be the lesser of:

    a.  the difference between the limits of liability of this coverage, and the amount paid to the *insured* by or for any *person* or organization who is or may be held legally liable for the *bodily injury* or *property damage;* or

    b.  the amount of the damages sustained but not recovered.

State Farm argues that the language under the Limits of Liability heading in clause 7, "any amount payable under this coverage," refers to the limit of liability referred to in clause 1 under the same heading. Victor argues, on the other hand, that the questioned phrase refers to the language of the general insuring clause under Coverage U: "We will pay damages ... an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle...." In our view Victor has the better argument for a number of reasons.

First, structurally, clauses 7 and 1 under the Limits of Liability heading are parallel. Both modify the Coverage U insuring clause, but neither modifies, or is subordinate to, the other. This suggests that the reduction clause in clause 7 applies to "damages ... an insured is legally entitled to collect" described in the general insuring clause rather than to the policy limits described in clause 1.

Similar reasoning was employed by the Court of Appeals of Maryland in *McKoy v. Aetna Casualty & Surety Co.,* 281 Md. 26, 374 A.2d 1170, 1172–73 (1977):

---

posed. Although the court should not answer questions unrelated to the case at hand, the answering court should have the same freedom to analyze the factual circumstances that it would have if the entire case were before the court. Indeed, the ability of the answering court to reshape or add to the issues is necessary to further the goals of certification. The answering court may be best situated to frame the question for precedential value and to control the development of its laws.

Corr & Robbins, *Interjurisdictional Certification and Choice of Law,* 41 Vand.L.Rev. 411, 426 (1988).

When the structure of the endorsement and the arrangement of the various clauses are considered, we believe that clause III(d) should be construed as providing for a setoff against the total damages suffered and not against the face value of the endorsement. . . .

Section I, "Uninsured Motorist Coverage," sets out the basic liability of Aetna, to pay all damages which the insured is legally entitled to recover resulting from an accident with an uninsured motorist. Section III, entitled "Limits on Liability," begins "the company's liability is limited as follows." This strongly suggests that the limitations which follow are to be understood as limits on the primary liability articulated in Section I.

Section III(a) then limits liability to $20,000 per person. Sections III(b) and (c) concern limits on property damage and claims made under other insurance. Finally, Section III(d) contains the setoff clause. There is no indication that III(d) is in any way subordinated to III(a). Both clauses stand on equal footing, and both must therefore be understood as independently modifying the primary liability of Section I. That is, amounts paid to an insured on behalf of the tortfeasor shall be deducted from "all sums which the insured . . . (is) legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle." Under the terms of this contract the setoff clause, III(d), applies to the total damages incurred and is not a further limitation upon the $20,000 limit set forth in clause III(a).

Moreover, the meaning of the reduction clause under clause 7 of the Limits of Liability column of the insurance policy can be inferred by contrasting the language used in clause 7 with that used in clause 8. Clause 8, relating to underinsured motor vehicle coverage, specifically requires deduction of amounts paid to the insured not from "any amount payable" but from "the limits of liability of this coverage." If State Farm had intended that amounts received under clause 7, pertaining to uninsured motorist coverage, would likewise be deducted from the limits of liability, identical language could have been used.

■ Finally, the underlying purpose of reduction clauses such as that contained in clause 7 is to prevent double recoveries.

Relying on perceived statutory intent to make available to the insured the full extent of statutory UM coverage for the satisfaction of uncompensated damages, the majority of the courts have [sic] refused to enforce the tortfeasor reduction clause where its operation would render any part of the insured's statutory coverage limits unavailable for this purpose. *These courts have, therefore, limited the function of the tortfeasor reduction clause to the prevention of duplicate damages recoveries.*

2 Irvin E. Schermer, *Automobile Liability Insurance* § 26.02 (1994) (citing numerous cases) (emphasis added). This purpose is furthered by our interpretation of clause 7 and would not be furthered by an interpretation requiring a reduction from policy limits where total damages exceed policy limits.

## III. CONCLUSION

For the above reasons we interpret the State Farm policy to require deduction of the $50,000 Lichter settlement from the total damages award rather than from policy limits.

## APPENDIX

The United States District Court's Statement of Facts and Applicable Law which accompanied the Certification is as follows:

### STATEMENT OF FACTS

On September 24, 1986, Martin Victor was injured in an automobile accident in Anchorage, Alaska. Victor abruptly stopped to avoid a wheel thrown by a trailer towed by Ronald Smith and was rear-ended by a vehicle driven by Norman Lichter. Victor received a default judgment against the uninsured Smith for over $300,000. Victor settled his claims against Lichter for $50,000.

At the time of the accident, Victor was insured by State Farm Fire and Casualty

Company ("State Farm"). His policy limits for uninsured and underinsured motor vehicle coverage ("UIM") were $100,000 per person/$300,000 per accident. The terms of Victor's UIM coverage were outlined in Section III of Endorsement 6895T of his car insurance policy. Under Section III, State Farm agreed to provide the following coverage as follows:

We will pay damages for *bodily injury* and *property damage* an *insured* is legally entitled to collect from the owner or driver of an *uninsured motor vehicle* or an *underinsured motor vehicle*. The *bodily injury* or *property damage* must be caused by accident arising out of the operation, maintenance or use of an *uninsured motor vehicle* or an *underinsured motor vehicle*.

Under the subheading "Limits of Liability," Section III of the policy included the following reduction clauses:

3. Any amount payable under this coverage for *bodily injury* shall be reduced by any amount paid or payable to or for the *insured* under:

   a.   the liability coverage;

   b.   the medical payments coverage;

   c.   any workers' compensation law.

. . . .

7. If the damages are caused by an *uninsured motor vehicle,* any amount payable under this coverage shall be reduced by any amount paid or payable to or for the *insured* by or for any *person* or organization who is or may be held legally liable for *bodily injury* to the *insured* or *property damage*.

*See* Docket No. 63, Exhibit E, pp. 18–20.

In October 1991, Victor sued State Farm in the Superior Court of Alaska to recover damages under his UIM coverage, and the case was subsequently removed to the United States District Court. Under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.,* the Court ordered the parties to arbitrate their dispute in conformity with language in the insurance contract requiring arbitration, and stayed further proceedings pending the arbitration. *See* Docket Nos.

26 and 56. Following the arbitration proceedings on February 21 and 22, 1994, the arbitrators determined that Victor incurred damages totalling $293,626.80, with Smith 75% at fault and Lichter 25% at fault. *See* Arbitration Award, Docket No. 63, Exh. A. State Farm then issued a check to Victor for $41,469.55, which represented Victor's $100,000 policy limit, less an offset for the $50,000 Victor had received from his settlement with Lichter and $8,530.45 State Farm had already provided Victor under his medical payments coverage.

State Farm now moves to dismiss any remaining proceedings in this Court, arguing that it has satisfied its payment obligations under its insurance policy. Docket No. 61. State Farm argues that the phrase "amounts payable" in Section III of the policy refers to the policy's UIM coverage limit. Consequently, under the reduction clause at paragraph 7, it was appropriate to reduce the "amounts payable" by the amount of any payments Victor received from Lichter, a potentially liable person. Victor opposes the dismissal and moves for summary judgment, arguing that State Farms' [sic] obligations are unfulfilled under the policy because the amount Victor received from Lichter should not have been offset against the $100,000 policy limit. Docket No. 62. Victor contends that the phrase "amounts payable" in Section III of the policy should be interpreted to mean "total damages caused by the uninsured motor vehicle." Thus, the payments Victor received from Lichter and from the medical payments coverage should offset Victor's total damages but not his UIM coverage limit.

### APPLICABLE LAW

At the time of the accident, in 1986, Alaska's statute regarding motor vehicle liability insurance required that the insurer provide protection from damages caused by uninsured or underinsured motorists in the same amounts as the insured's liability coverage. AS 28.22.010(3). The insurer's liability for UIM coverage was limited as follows:

**Sec. 28.22.110. Maximum liability of carrier.** (a) The maximum liability of the insurance carrier under the uninsured and underinsured motorists coverage required under this chapter shall be the difference between the coverage limit of liability and the amount paid to the insured by or on behalf of the uninsured and underinsured motorist.

(b) Amounts payable under the uninsured motorists and underinsured motorists coverage required to be offered under this chapter shall be reduced by

(1) amounts paid or to be paid under any workers' compensation law;

(2) amounts paid or payable under any valid and collectible automobile medical payments insurance or bodily injury or death liability insurance; and

(3) amounts paid by or on behalf of the uninsured or underinsured motorist. AS 28.22.110 (1984). The current version of this provision is identical. AS 28.22.211 (1989). Under the statute, the Alaska Supreme Court has held that an insurer's UIM limit of liability will be reduced by any amount the insured received from his medical payments coverage. *Burton v. State Farm Fire and Casualty Co.,* 796 P.2d 1361, 1364 (Alaska 1990). In light of the holding in *Burton,* one could argue that the phrase "amounts payable" in the statute and the insurance policy must refer to the UIM limit of liability for purposes of offsetting payments received from other legally responsible persons. While *Burton* certainly forecloses Victor's contention that the medical payments he received should be reduced from his total damages rather than his UIM coverage limit, the opinion does not attempt to interpret the phrase "amounts payable," nor does it address the issue of payments received from another tortfeasor.

The courts in other jurisdictions have addressed similar language in reduction clauses found in various insurance contracts, i.e., "any amount otherwise payable for damages under this coverage," and "any amount payable under the Uninsured Motorists Coverage." Some jurisdictions accept the insurer's argument and interpret the policies to provide offsets against the coverage limits. *See, e.g., Aetna Casualty & Sur. Co. v. Kenner,* 570 A.2d 1172 (Del.1990); *Geisler v. Motorists Mut. Ins. Co.* [382 Pa.Super. 622], 556 A.2d 391, 396 (Pa.Super.Ct.1989) (citing *Bateman v. Motorists Mut. Ins. Co.* [377 Pa.Super. 400], 547 A.2d 428 (Pa.Super.Ct.1988)); *Nikiper v. Motor Club of America Cos.* [232 N.J.Super. 393], 557 A.2d 332 (N.J.Super.Ct.App.Div.1989); *Davenport v. Aid Ins. Co. (Mutual),* 334 N.W.2d 711 (Iowa 1983). Others favor the insured's argument and interpret the policies to provide offsets only against total damages. *See, e.g., Mullis [Mulliss] v. American Protection Ins. Co.,* 653 F.Supp. 685, 688 (D.Vt. 1987); *Allied Mut. Ins. Co. v. Gordon* [248 Kan. 715], 811 P.2d 1112, 1124 (Kan.1991); *Gromolka [Gomolka] v. State Automobile Mut. Ins. Co.* [15 Ohio St.3d 27], 472 N.E.2d 700, 702 (Ohio 1984); *Dunkel v. Motorists Mut. Ins. Co.* [41 Ohio App.3d 130], 534 N.E.2d 950, 953 (Ohio Ct.App. 1987).

Courts favoring insurers find that the reduction clause language is unambiguous and that the phrase "under this coverage" refers to the maximum policy limit—the greatest amount that the insurer would ever be called upon to pay. *See Aetna,* 570 A.2d at 1174. Courts adopting the insured's argument find that the language is ambiguous and that such ambiguities should be interpreted in favor of the insured. *See id.* at 1178 (Moore, J., dissenting). They reason that the phrase "any amounts payable" refers to the general coverage clause and should be interpreted to mean "any damages compensable." *See Mullis [Mulliss],* 653 F.Supp. at 689 (citing *McKoy v. Aetna Casualty & Sur. Co.* [281 Md. 26], 374 A.2d 1170, 1172 (Md. 1977)); *Gromolka [Gomolka],* 472 N.E.2d at 702. If the reduction clause were meant to apply to the policy limits rather than total damages, it would state, "limits of liability shall be reduced." *See Aetna,* 570 A.2d at 1179 (Moore, J., dissenting). *Cf. Gromolka [Gomolka],* 472 N.E.2d at 702 (policy used "amounts payable" language) *with James v. Michigan Mut. Ins. Co.* [18

Ohio St.3d 386], 481 N.E.2d 272 (Ohio 1985) (policy used "limits of liability" language).

Courts interpreting their respective motor vehicle insurance statutes and insurance contracts formed pursuant to state law look to public policy to justify their conclusions. Generally, the intent of the statutes mandating UIM coverage is to afford a person injured in an accident caused by an uninsured motorist the same benefits that the victim would have had if injured by an identifiable motorist covered by an applicable standard automobile liability insurance policy. 7 Patrick D. Kelly, *Blashfield Automobile Law and Practice* § 315.1 (rev. 3d ed. 1987 & Supp.1994). The majority in *Aetna* explained that "uninsured/underinsured coverage is best viewed as a supplemental form of coverage that allows the insured to achieve a recovery from all tortfeasors that is equal to his own liability coverage." 570 A.2d at 1176. Thus, provisions in a policy that operate to reduce uninsured motorist coverage where other coverage or other benefits are available to the insured are valid if such provisions do not operate to deny payments to the insured of less than the statutory minimum. *See Davenport*, 334 N.W.2d at 714.

The dissent in *Aetna* complained, however, that the majority seemed to impose a ceiling on the insured's recovery, while the law was designed to impose a floor. 570 A.2d at 1177 (Moore, J., dissenting). UIM coverage is a type of gap-filling coverage that should be liberally construed to provide the intended protection. *See Allied Mut. Ins. Co.*, 811 P.2d at 1122. Once the insured purchases uninsured motorist coverage, he or she is entitled to the full extent of the benefit which law requires to be offered. "Attempts by insurers to reduce this benefit by hypertechnical language or exclusion clauses are equally repugnant to the public policy of protecting persons injured in auto accidents." *Aetna*, 570 A.2d at 1180 (Moore, J., dissenting).

The general purpose of a reduction clause is to prevent double recoveries. 46A C.J.S. *Insurance*, § 1681. Thus, the Alaska Supreme Court's decision in *Bur-*

*ton* appropriately reduced the UIM coverage limit by the amount of medical payments the insured had already received from his insurer. In this case, the percentage of Victor's total damages attributable to the comparative fault of the uninsured Smith exceeds State Farm's UIM policy limit, and the payment received from Lichter is less than the amount of damages attributable to Lichter's comparative fault. Thus, there is no danger of double recovery if Victor receives the full amount of his UIM policy limit, offset only by the medical payments he has already received from State Farm.