**Bernard KLIMEK and Deborah Klimek**

v.

**HORACE MANN INSURANCE COMPANY.**

No. 2:91–CV–306.

United States District Court, D. Vermont.

March 17, 1993.

William P. Neylon, Swainbank, Morrissette & Neylon, St. Johnsbury, VT, for plaintiffs.

Thomas E. McCormick, McNamara, Fitzpatrick, McCormick & Mertz, Burlington, VT, for defendant.

## OPINION AND ORDER

PARKER, Chief Judge.

Deborah Klimek was injured in an automobile accident in 1987. She and her husband Bernard Klimek sought to recover for her damages under two insurance policies [1] ("the policies") issued by Horace Mann Insurance Company ("the defendant"). Specifically, they invoked the underinsured motorist (UM) coverage of the policies [2] to cover the portion of damages allegedly suffered by Mrs. Klimek which remains unsatisfied by their recovery from other sources. Defendant declined to provide said coverage.

In response, the Klimeks filed a claim seeking a declaratory judgment, pursuant to 28 U.S.C. § 2201, against the defendant to establish the extent of UM coverage available under the two policies. The Klimeks also seek punitive damages against defendant for breach of contract and bad faith.

Defendant moved for summary judgment pursuant to Federal Rule of Civil Procedure 56, contending that plaintiffs were precluded from recovering under the UM coverage provided by their policies or that any recovery should be offset by all amounts previously recovered by the plaintiffs from third parties involved in the accident.

Plaintiffs responded by moving for summary judgment on their request for declaratory judgment. Plaintiffs claim that they are entitled to recover the full amount under the UM provision of their insurance policies or, alternatively, that such recovery only be offset by the amount recovered from the underinsured motorist.[3]

## FACTS

On June 5, 1987 plaintiff Deborah Klimek was involved in an automobile accident while a passenger in a car owned and operated by Dwight Boyce ("Boyce"). The accident involved a collision between Boyce's vehicle and a truck driven by George Galfetti ("Galfetti") and owned by Cooley Asphalt & Paving Corporation, now known as Pike Industries ("Pike"). Klimek suffered severe injuries, some of which are permanent, as a result of the accident.

At the time of the accident, Boyce had motor vehicle liability coverage with policy limits of $50,000 per person and $100,000 per accident and Pike had motor vehicle liability coverage with policy limits of $1,000,000. Plaintiffs possessed two insurance policies issued by defendant, which in the aggregate provided UM coverage of $300,000 per person and $600,000 per accident.

Plaintiffs brought suit in state court against Pike, Galfetti and Boyce for damages arising from the accident. Following a jury trial in which no verdict was returned, plaintiffs settled their claims against Pike and Galfetti for $200,000 and against Boyce for $46,948.09. General releases were executed. These facts are undisputed.

Plaintiffs filed a claim with defendant stating that the total damages suffered by Deborah Klimek were greater than $550,000, leaving her uncompensated for at least $303,051.91 and that these uncompensated damages were covered by the UM provision of their policies. Defendant denied the claim and plaintiffs initiated this action.

Presently before this Court are the two motions for summary judgment. Defendant's motion for summary judgment asserts that because Pike had insurance coverage with a $1,000,000 limit, there was no coverage gap at the time of the accident and the UM coverage of the policies is inapplicable. Even should the plaintiffs be able to make a claim against it, defendant argues that plaintiffs' settlement with and release of the joint

---

1. Horace Mann Insurance Company, Auto Policy, # 44–20578270 and # 44–21365820.

2. The underinsured motorist coverage is set forth in an endorsement to the policies. Horace Mann Underinsured Motorists Insurance Endorsement, CC–V04002 (12–80).

3. Also pending before the Court is defendant's Motion for Oral Argument. (Paper # 10). Pursuant to Local Rule 5, this Court declines to hear oral argument as the issues have been extensively briefed by both parties and may be disposed of based on the briefs.

**432**

tortfeasor Pike has deprived defendant of its subrogation rights and plaintiffs are therefore precluded from invoking their UM coverage. In the alternative, if plaintiffs are not precluded from recovering under the UM coverage, defendant claims that such coverage is to be offset by all the sums already recovered by the plaintiffs through settlement.

Plaintiffs assert that the plain language of the policies and the extent of the damages suffered by Deborah Klimek which remain unsatisfied entitle them to recover the full amount of their UM coverage. In the alternative, plaintiffs argue that should that coverage be offset by any funds recovered through settlement, only the amount recovered from the underinsured motorist Boyce should offset the coverage, and not that amount recovered from the fully insured motorists Pike and Galfetti.

## DISCUSSION

### A. Standard for Summary Judgment

Summary judgment may be granted the moving party only when it is shown that there is "no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(c). There is no genuine issue of material fact where a rational trier, viewing the evidence in the light most favorable to the nonmoving party, could not find in favor of that party. *Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir.1991) (citations omitted). In ruling on a motion for summary judgment, a court must resolve all ambiguities in favor of the nonmoving party. *Levin v. Analysis & Technology, Inc.*, 960 F.2d 314, 316 (2d Cir.1992).

### B. Applicability of UM coverage

■ Both parties have extensively briefed the Court on the issues concerning the applicability of UM coverage and the amount that coverage is to be offset in light of recovery from one or more tortfeasors. However, these issues need not be addressed to resolve the matter before the Court. Instead, this Court need only focus on the nature of the plaintiffs' settlement with Pike to resolve the dispute. Because there are no disputes as to the facts that pertain to this inquiry, the issue is solely a question of law and is appropriately resolved on a motion for summary judgment.

In its Answer to the Complaint, defendant alleged an affirmative defense based on the plaintiffs' release of

a fully insured joint tortfeasor [Pike] for only a fraction of its available liability insurance coverage, leaving Defendant without a right of subrogation against this joint tortfeasor; Plaintiffs are therefore estopped by their conduct from now seeking additional compensation from Defendant.

(Paper # 3) In response, plaintiffs submitted an affidavit stating why it considered settlement with Pike to be the best course [4] but did not dispute the defendant's characterization of the settlement as the "release of a fully insured joint-tortfeasor." Whatever the underlying rational for the settlement was, the effect of its release of Pike from all claims defeats plaintiffs' present claim.

■ In Vermont, any motor vehicle insurance policy must provide UM coverage pursuant to 23 V.S.A. § 941.[5] The purpose of the statute is to place "the insured party in the same position that he would have been in had the tortfeasor carried liability insurance in the amount of the insured's underin-

---

4. Plaintiffs' attorney stated that in light of discussions with Pike's attorney and members of the state court jury after the first trial, he felt that the chances of establishing Pike's liability at another trial were not good and that settlement was the best course.

5. 23 V.S.A. § 941 states in part that:
[N]o policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle may be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein, or supplemental thereto, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured, underinsured or hit-and-run motor vehicles, for bodily injury, sickness or disease, including death, and for property damages resulting from the ownership, maintenance or use of such uninsured, underinsured or hit-and-run motor vehicle.

sured motorist policy limit." *Webb v. U.S. Fidelity & Guaranty Co.*, 605 A.2d 1344, 1347 (1992). The statute is remedial and is to be construed liberally in favor of the insured. *Goodrich v. Lumbermens Mutual Casualty Co.*, 423 F.Supp. 838, 842 (D.Vt. 1976).

■ Such coverage applies "whenever the tortfeasor has no insurance coverage or has insufficient coverage" as defined in the statute. *Webb*, 605 A.2d at 1348. In order to recover under UM coverage a policyholder must establish the liability of the uninsured motorist and his damages. *Rhault v. Tsagarakos*, 361 F.Supp. 202, 206 (1973). It then becomes the duty of the UM coverage carrier to "provide UM coverage, up to the policy limits provided, for the portion of the plaintiffs' total judgment that remained unsatisfied by their recovery from other sources." *Muir v. Hartford Accident & Indem. Co.*, 147 Vt. 590, 594, 522 A.2d 236 (1987).

■ The statute provides for a reduction in payments under such coverage by any amount recovered from the underinsured motorist, *see Rhault*, 361 F.Supp. at 206 n. 2; *Muir* 147 Vt. at 594, 522 A.2d 236, or for payments made to the insured when the insured's recovery from all sources exceeds his or her damages. *See Bradley v. H.A. Manosh Corp.*, 157 Vt. 477, 601 A.2d 978, 984 (1991).

What the statute does not effect is the insurer's right of subrogation, which has been expressly approved by the Vermont legislature. 8 V.S.A. § 4203(4).[6] Subrogation "arises when one man is compelled to pay a debt for which another is primarily liable and which, in good conscience, should have been discharged by the latter." *Norfolk & Dedham Fire Insurance Co. v. Aetna Casualty & Surety Co.*, 132 Vt. 341, 343, 318 A.2d 659 (1974).

The defendant's policies explicitly provide that "upon payment under coverages A, B, D, E, F, G, I, R and J [which includes the UM coverage] of this policy the company shall be subrogated to all the insured's rights of recovery therefor and the insured shall do whatever is necessary to secure such rights and do nothing to prejudice them." Horace Mann Insurance Company, Auto Policy, Policy Conditions, Number 6, at 28–29. The plaintiffs' settlement with Pike has left the defendant with no rights to which it may be subrogated. This failure to comply with a condition of their policies, as well as the language of 8 V.S.A. § 4203(4), provides defendant with appropriate grounds to deny UM coverage to the plaintiffs.

This is true despite the fact that at first blush it may appear contrary to the goal of providing satisfactory coverage for such damage the insured is legally entitled to recover from the underinsured motorist. But as stated above, the purpose of UM coverage is to place the insured in the same position she would have been in had the underinsured tortfeasor carried liability insurance in the amount of the insured's UM policy limit. It is not to put the insured in a better position—which would be the result if the insured were allowed to recover under her UM coverage after settling with and releasing a fully insured tortfeasor.

If such a course of action were endorsed, insureds, rather than taking on the risk of establishing the liability of a fully insured tortfeasor, may choose the bird in the hand rather than the two in the bush by settling for an amount below that tortfeasor's limit of liability and ensuring some modicum of recovery while at the same time retaining the right to make a claim under their UM coverage. In short, the insured would be able to cover its down side—the risk of no recovery at all—while at the same time keeping the up side—ensuring some recovery and keeping the possibility of full recovery under its UM coverage—alive. All the insured had to give for this arrangement is a release to the joint tortfeasor, which, in this scenario, would not impact its right for further recovery under the UM coverage.

---

6. 8 V.S.A. § 4203(4) states in part:
   In case of payment of loss or expense under this policy, the company shall be subrogated to all rights of the insured against any party, as respects such loss or expense, to the amount of such payment, and the insured shall execute all papers required and shall cooperate with the company to secure to the company such rights.

**434**

Such an arrangement is attractive for the tortfeasor, who avoids the risk of being found liable and held jointly and severally liable with the underinsured motorist for the insured's injuries, as well as avoiding any future liability by virtue of the insured's release.

Should the insured be able to establish the liability of the underinsured motorist and that its damages exceed the amount already recovered, the insurer is left holding the bag—it would be left with only a right of subrogation against the underinsured motorist, which by definition will not cover the payments the insurer makes to its insured. This is especially inequitable where the settlement releases a joint tortfeasor who had more than enough liability coverage to adequately compensate the insured for her injuries. Rather than rendering UM coverage unnecessary, the result is a windfall for a responsible tortfeasor.

23 V.S.A. § 941 is intended to provide a source of compensation for an underinsured motorist's liability. It does not provide a vehicle by which an insured can reduce its risk of recovery at the expense of its UM coverage carrier. Nor does it absolve the insured from complying with the terms of its policy and the statutory provision concerning the insurer's right of subrogation.

In this case the insureds made a conscious decision to settle with Pike in light of what it considered to be the unlikelihood of establishing Pike's liability. As part of the bargain, the plaintiffs released Pike from all claims. Having struck their bargain, plaintiffs must accept the results. One of those results is that defendant is left without its right of subrogation in regards to Pike. Whether the plaintiffs would be entitled to a recovery under their UM coverage is immaterial because this failure to comply with the conditions of their policies precludes them from seeking recovery under their UM coverage. For this reason, the defendant was within its rights in denying plaintiffs recovery under their UM coverage.

### CONCLUSION

As a matter of law, plaintiffs' release from all claims of a fully insured joint tortfeasor through settlement, thereby denying defendant of its right of subrogation, precludes them from recovering under the UM coverage of their policies. Accordingly, plaintiffs' Motion for Partial Summary Judgment is DENIED (Paper # 6 in Court's docket) and defendant's Motion for Summary Judgement (Paper # 4 in Court's docket) is GRANTED.